**John A. SCUDERO, Jr., Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–5854.

Court of Appeals of Alaska.

May 31, 1996.

Phillip Paul Weidner and Nicole D. Stucki, Weidner & Associates, Inc., Anchorage, for Appellant.

Trevor N. Stephens, Assistant District Attorney, Ketchikan, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

### OPINION

BRYNER, Chief Judge.

On July 17, 1994, John A. Scudero, Jr., deployed a gill net from his commercial fishing vessel and caught several salmon in state waters approximately 1.2 nautical miles from Annette Island. The area was outside the 3000–foot boundary of the Annette Island waters reserved for Metlakatlans and was closed to salmon fishing. Scudero did not have an entry permit to fish commercially for salmon in state waters. Scudero was charged with commercial fishing in closed waters in violation of AS 16.05.723(a) and 5 Alaska Administrative Code (AAC) 33.310(c)(1)(B), commercial fishing without a permit in violation of AS 16.43.140, and trailing a gill net in closed waters in violation of AS 16.05.723(a) and 5 AAC 39.250(a). A jury convicted Scudero of all three charges.

On appeal Scudero first argues that the district court erred in refusing to take "judicial notice" of pleadings from two other cases.

Five months after being arraigned on the current charges, Scudero filed a motion seeking to have the district court in Ketchikan take judicial notice of thirteen documents that he had filed in two Juneau cases in which he had previously been charged with fishing violations. While referring to his request as one for judicial notice, Scudero actually wanted the court to deem the Juneau pleadings filed in his Ketchikan case. However, Scudero did not submit copies of the

pleadings to the Ketchikan court, or explain his failure to do so. Nor did he otherwise state good cause for the Ketchikan court to take "judicial notice." Furthermore, although Scudero's motion for judicial notice was untimely under Alaska Criminal Rule 12(c) (generally requiring pretrial motions to be filed within twenty days of arraignment), Scudero failed to explain the late-filing of his request.

District Court Judge George L. Gucker denied Scudero's request, ruling that the Juneau pleadings had not been properly submitted to the Ketchikan court and that Scudero's request was in any event untimely. On appeal, Scudero claims error. But his motion for judicial notice plainly requested relief beyond that normally contemplated under Alaska's rules governing judicial notice of fact and law. *See* A.R.E. 201, 202. Although Judge Gucker was vested with broad discretion to relax procedural rules and might conceivably have been authorized to treat the Juneau pleadings as if they had also been filed in the Ketchikan case, absent a convincing showing of necessity for "judicial notice," without copies of the pleadings themselves, and given no justification for the untimeliness of Scudero's request, the judge certainly did not abuse his discretion in denying Scudero's motion.

Scudero nevertheless alleges that the district court erred "in failing to permit counsel, in the alternative, the opportunity to amend the motion." But the record provides no indication that Scudero ever requested or attempted to amend or refile his request for judicial notice, or that the district court did anything to thwart any such efforts. Nor does Scudero provide any meaningful argument or authority to support this allegation. We conclude that the argument is meritless.

Scudero next argues that the trial court erred in refusing to instruct the jury on Scudero's primary theory of defense. The day before trial, Scudero notified the court that, as a defense to his charges, he intended to assert that the conduct for which he was arrested involved "political acts which are part of his exercise of his right to free speech," as guaranteed under the First Amendment to the United States Constitution and Article I, Section 5 of the Alaska Constitution. Scudero, who is a Metlakatlan, claimed that at the time of the alleged violations, he was engaged in an act of civil disobedience to protest the state's enforcement of fishing regulations against Metlakatlans; he asserted that his intent was not to fish but to protest, and that this protest was protected under the constitutional right to freedom of speech. Scudero sought to have this defense heard by the jury and proposed jury instructions accordingly.[1] Judge Gucker declined to instruct the jury on Scudero's civil disobedience defense, ruling that Scudero's actions had not amounted to speech. On appeal, Scudero contends that he was entitled to present his defense to the jury.

We reject Scudero's argument. At the outset, we note that, to the extent Scudero had a potentially viable claim of First Amendment protection, the claim raised issues for resolution by the court as a matter of law, not by the jury as a matter of fact. *See* Paul H. Robinson, *Criminal Law Defenses* § 5(d) (1984). Scudero's constitutional defense may well have included preliminary factual issues whose resolution was necessary before the ultimate legal issue of First Amendment protection could be passed on by the court. But Scudero had no right to insist on a jury resolution of these preliminary factual matters.

---

1. In relevant part, Scudero proposed to instruct the jury as follows:

> If you find that the defendant, Mr. Scudero, intended to make a political protest statement and was not actually fishing for salmon, then you can find him "not guilty" of Count I, "commercial fishing in waters closed to commercial fishing."
> If you find that the defendant, Mr. Scudero, intended to make a political protest statement

and was not actually fishing for salmon, then you can find him "not guilty" of Count II, "commercial fishing for salmon without a commercial fisheries entry commission permit."
> If you find that the defendant, Mr. Scudero, placed his gillnet web in the water ... as part of a political protest then you can find him "not guilty" of Count III, "trailing a gillnet in waters closed to commercial fishing."

The right to a jury trial entitles the accused to have a jury pass on all the essential elements of the offense but does not extend to the resolution of extrinsic factual issues that bear on legal defenses that are not directly tied to an essential element of the crime charged—defenses that apply regardless of whether all necessary elements of an offense have been established. *Cf.* Model Penal Code § 1.12(4)(b) (in applying the Code, any fact not an element of an offense can be tried to the court or jury); Alaska Criminal Rule 12(b) ("Any defense ... which is capable of determination without the trial of the general issue may be raised before trial by motion.").

Thus, for example, it is settled that a claim of selective prosecution is a defense of law for the court, not one of fact for the jury. *Woodward v. State*, 855 P.2d 423, 429 (Alaska App.1993). And entrapment has been recognized as a legal defense tried by the court, not the jury. *Yates v. State*, 681 P.2d 1362 (Alaska App.1984). So too, we have held that mistake of law is a defense decided by the court. *Cornwall v. State*, 915 P.2d 640, 647 (Alaska App. 1996); *Ostrosky v. State*, 704 P.2d 786, 792 (Alaska App.1985).

Scudero's political protest defense falls squarely within the same category as selective prosecution, entrapment, and mistake of law. None of these defenses are premised on proof of factual circumstances negating a necessary element of the alleged crime; all apply, as a matter of extrinsic legal policy, even when the elements of a crime have been proved beyond a reasonable doubt. To the extent that his political protest defense raised issues of fact beyond those necessarily included in the jury's consideration of the necessary elements of the charged offenses, Scudero was required to seek resolution of those issues by the district court, not by the jury. Thus, the district court did not err in declining to instruct the jury on Scudero's defense.

Of course, Scudero was entitled to present his defense to the jury insofar as it related to the existence of an essential element of any of the offenses with which he was charged. An integral aspect of Scudero's constitutional defense was his assertion that he had no intent to fish commercially, but instead intended only to engage in an act of political protest. This aspect of Scudero's defense had an intimate bearing on an essential element of two of the three violations charged in Scudero's case.

Two of Scudero's charges——commercial fishing in closed waters and commercial fishing without a permit——alleged violations of commercial fishing law and thus necessarily required proof that Scudero engaged in commercial fishing. As defined in AS 16.05.940(5), " 'commercial fishing' means the taking, fishing for, or possession of fish ... *with the intent of disposing of them for profit, or by sale, barter, trade, or in commercial channels.*" (Emphasis added.) Proof of a knowing act of fishing thus would not have sufficed to establish these charges; rather, to show that Scudero engaged in commercial fishing, the state was required to prove that he specifically intended to dispose of his fish in commercial channels.

Since Scudero's claim of civil disobedience asserted that he acted with intent to protest an unfair or unjust law, not with intent to take fish for commercial disposition, his defense, if accepted by the jury, would have negated an essential element of the two commercial fishing offenses. To this extent, Scudero was plainly entitled to assert his defense before the jury.

But the record establishes that he did just that. At trial, Scudero was given free reign to develop evidence of and present argument on the underlying purpose of his conduct, as well as the effect of that purpose on the necessary elements of the commercial fishing offenses. Scudero did in fact argue for acquittal on the theory that his intent was to engage in protest, not commercial fishing. The court properly instructed the jury on the statutory definition of commercial fishing. And, as we conclude in a later portion of this decision, although the trial court declined to give Scudero's proposed instructions on civil disobedience, it fully and appropriately instructed the jury on the essential elements of the charged offenses and on the definition of intent. Accordingly, the trial court's rejection of Scudero's proposed civil disobedience defense instructions had no adverse effect on

the jury's consideration of the charged offenses.

Since resolution of Scudero's constitutional defense was a matter for the court rather than the jury, and since Judge Gucker rejected the defense on its legal merits, we must decide whether that ruling was erroneous. We conclude that it was not.

█ We assume for purposes of this decision that Scudero's conduct was "sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments." *Texas v. Johnson,* 491 U.S. 397, 404, 109 S.Ct. 2533, 2539, 105 L.Ed.2d 342 (1989). Since the statutes and regulations under which Scudero was prosecuted were unrelated "to the suppression of free expression," *id.* at 403, 109 S.Ct. at 2539, the pertinent issue becomes whether their application to Scudero's case can be justified under the standard set out in *United States v. O'Brien,* 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). *See Texas v. Johnson,* 491 U.S. at 404, 109 S.Ct. at 2539. This standard allows criminal sanctions to apply to conduct that has a communicative element when the challenged statute or regulation "is within the constitutional power of the [g]overnment; ... it furthers an important or substantial governmental interest; ... the governmental interest is unrelated to the suppression of free expression; and ... the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *O'Brien,* 391 U.S. at 377, 88 S.Ct. at 1679. More recently, in *Clark v. Community for Creative Non-Violence,* 468 U.S. 288, 293, 104 S.Ct. 3065, 3069, 82 L.Ed.2d 221 (1984), the Supreme Court likened the *O'Brien* standard to time, place, or manner restrictions on the exercise of speech, which "are valid provided that they are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that

they leave open ample alternative channels for communication of the information."

█ In the present case, there can be no serious doubt that the fishing laws under which Scudero was charged pass muster under the *O'Brien* standard. These laws are content neutral as to any expressive element of a violation; they further an important or substantial state interest that is unrelated to the suppression of free expression;[2] any incidental restriction on First Amendment freedoms is no greater than is essential to the furtherance of that interest; and they leave open alternative channels for communication of the protest message. We conclude that the district court did not err in rejecting Scudero's civil disobedience defense.

█ Scudero separately challenges three jury instructions relating to intent. Over Scudero's objection, the trial court instructed the jury:

> When the evidence shows that a person voluntarily did that which the law declares to be a crime, it is no defense that the person did not know that his or her act was unlawful or that the person believed it to be lawful.

Scudero argues that this instruction improperly defeated his constitutional defense, since the instruction "made it impossible for jurors ... to find in favor of Mr. Scudero even if they were convinced that [his] actual intent was to protest." But nothing in this instruction prevented the jurors from acquitting Scudero if they found that he had fished with the sole intent to protest, and not for commercial purposes. The instruction, which is a verbatim version of Alaska Pattern Jury Instruction 81.620(a), is simply a correct statement of the well-established rule that mistake of law is ordinarily no defense to a criminal act. *See Ostrosky v. State,* 704 P.2d 786 (Alaska App.1985). The district court did not abuse its discretion in giving this instruction.

---

2. Addressing this aspect of the *O'Brien* standard, Scudero argues that the state has little interest in fishing practices of Metlakatlans because Metlakatlans are "a relatively small group ... [who] probably could not fish a resource to extinction." But this argument misses the point: the *O'Brien* standard requires that the challenged regulation

or statute itself serve an important or substantial state interest, not that its enforcement in the particular circumstances charged necessarily serve that interest. The challenged provision "need not be judged solely by reference to the demonstration at hand." *Clark,* 468 U.S. at 296–97, 104 S.Ct. at 3070–71.

Scudero next challenges the definition of "intentionally" that the jury received in the instructions:

A person acts "intentionally" with respect to a result described by a provision of law defining an offense when the person's conscious objective is to cause that result; when intentionally causing a particular result is an element of an offense, that intent need not be the person's only objective.

This language tracks, verbatim, the definition of "intentionally" that is used in Alaska's revised criminal code. *See* AS 11.81.900(a)(1). Scudero failed to object to it below, and he advances no argument or authority to support his claim of error on appeal. Scudero's challenge is meritless.

The last instruction challenged by Scudero dealt with proof of intent:

State of mind may be proved by circumstantial evidence. It rarely can be established by any other means.... [W]hat a defendant does or fails to do may indicate[ ] the defendant's state of mind.

This instruction simply mirrors Alaska Pattern Jury Instruction 1.44. It is an accurate statement of the law. *See Gray v. State,* 463 P.2d 897, 905 (Alaska 1970); *Simpson v. State,* 877 P.2d 1319, 1320 (Alaska App.1994); *State v. McDonald,* 872 P.2d 627, 654–55 (Alaska App.1994). Again, Scudero did not object to this instruction below and presents no coherent explanation for his claim on appeal that the trial court erred in giving the instruction to the jury. Scudero's claim is meritless.

Scudero's last issue relates to his sentence. One of Scudero's offenses, fishing without a valid entry permit, carried a mandatory minimum penalty: AS 16.43.970(g)(1) provides that a first offender convicted of this offense may be sentenced to forfeiture and jail time of up to 90 days at the sentencing court's discretion, and, in addition, "shall be sentenced to a fine of not less than $5,000 nor more than $10,000 and loss of commercial fishing privileges for a period of one year after the date of conviction." At Scudero's sentencing hearing, Judge Gucker imposed the mandatory minimum $5,000 fine and one-year loss of fishing privileges; in so doing, the judge concluded that the court had no authority to suspend any portion of the fine or loss of privileges. Scudero argues that the sentencing court was mistaken in its belief that the one-year loss of fishing privileges could not be suspended. The state concedes error. The concession is well-founded. *See Curtis v. State,* 831 P.2d 359, 361 (Alaska App.1992). Accordingly, we must remand this case to the district court for reconsideration of its sentencing order in light of its authority to suspend all or part of the one-year loss of fishing privileges.

Scudero's convictions are AFFIRMED. This case is REMANDED for reconsideration of the sentencing order as provided for herein.