**Leslie L. SIMPSON, Jr., Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–4507.**

Court of Appeals of Alaska.

Aug. 5, 1994.

Sidney K. Billingslea, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Eric A. Johnson, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

*OPINION*

BRYNER, Chief Judge.

A jury convicted Leslie L. Simpson of first-degree murder for beating his wife, J.S., to death. Superior Court Judge Milton M. Souter sentenced Simpson to eighty-five years in prison. Simpson appeals, contending that the evidence was insufficient to support his conviction and that his sentence is excessive.

Over a period of several hours during the evening of June 30, 1991, Simpson—6′ 2″ tall and weighing at least 260 pounds—savagely beat and kicked 4′ 10″, 160–pound J.S., repeatedly shouting threats such as, "I'm going to kill you, you stupid bitch." Neighbors who heard the assault gathered in the area of Simpson's driveway. They heard J.S. beg Simpson for mercy. During a pause in his assault, Simpson exited his home and angrily

told a neighbor about "[J.S.] spending his $135 and he's not going to put up with it anymore, he's going to kill her and he can't ... put up with it any longer." Neighbors eventually reported the incident. Police officers who responded to the call forced their way into Simpson's home after Simpson refused them admission. They found J.S. in the bedroom, unconscious, moaning, and severely bruised.

J.S. was transported to a hospital. Upon admission, she was found to have "innumerable [bruises]. Too many to count." The bruises covered her face, head, chest, abdomen, both lower legs, and both arms. The injuries J.S. suffered included multiple blunt force injuries, which "required a relatively large degree of force [such as] a kick, a blow with the knee or a fist swung as hard as possible." J.S.'s neck was fractured, she appeared to have fractured facial bones, her eyelids were swollen shut, and she had blood in her nose, mouth, and ears.

J.S.'s pancreas had been torn in half by a blow sufficiently forceful "to get through the abdominal wall and all the muscles and all the organs." J.S. also suffered a pulmonary contusion and had many fractured ribs, some broken in two places. According to the treating physician, the bruises to J.S.'s ribs and lungs "required a significant amount of force, enough force to inflict the bruise, break the blood vessels in your skin, break the ribs and then also still have enough force to cause a bruise inside of your chest." In addition, J.S. had a partial tear in her large intestine, and a bruised bowel.

Without medical intervention, J.S. would have died of her injuries "fairly quickly." After spending two weeks hospitalized under intensive care, J.S. died of respiratory distress syndrome, a condition brought on by her injuries. Simpson was charged with her murder.

At trial, Simpson acknowledged having argued with J.S. and admitted that he had slapped and kicked her several times, but denied any intent to kill her. He claimed that he was unaware of the severity of her injuries. He further testified that both he and J.S. had been drinking throughout the day and, together, had consumed almost three cases of beer; according to Simpson, he had drunk most of the beer himself and, in addition, had drunk a pint of whiskey. Simpson's theory of defense was that he never intended to kill J.S. and that, due to his consumption of alcohol, he lacked capacity to form intent.

On appeal, Simpson challenges the sufficiency of the evidence to establish that he formed or was capable of forming specific intent to kill J.S. To establish whether sufficient evidence was presented to support a conviction, we view the evidence in the light most favorable to the state and inquire whether reasonable jurors could conclude that the accused's guilt was established beyond a reasonable doubt. *Odom v. State*, 798 P.2d 353, 354–55 (Alaska App.1990). Evidence of intent is seldom established through direct evidence; the state may prove this element through circumstantial evidence. *Gray v. State*, 463 P.2d 897, 905 (Alaska 1970).

Here, the state presented both direct and circumstantial evidence of specific intent. Simpson's repeated, unambiguous and unqualified declarations of his intent to kill J.S. provided direct and compelling evidence on the issue. The nature and extent of J.S.'s injuries, coupled with the totality of the circumstances surrounding their infliction, provided an abundant source from which the jury could infer that Simpson intended to do precisely what he did. *See generally* 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 7.2(b), at 195 (1986) ("in appropriate cases, generally involving big men attacking small, frail men or women or children, and generally involving the repeated use of hands and feet, an inference of an intent to kill may properly be drawn").

Nor does the uncontroverted evidence of Simpson's drinking afford a basis for questioning the sufficiency of the evidence on the issue of intent. Issues of credibility are for the jury. *Anthony v. State*, 521 P.2d 486, 492 (Alaska 1974) (holding that "[t]he assessment of witness credibility is exclusively within the province of the jury"); *Brown v. Anchorage*, 680 P.2d 100, 104 (Alaska App.

1984) (holding that "[c]redibility choices and the weighing of evidence are within the province of the trier of fact"). Here, the jury was free to discredit or downplay Simpson's self-serving claims concerning the amounts of alcohol he had consumed. Ample evidence was presented, including the testimony of neighbors and investigating officers, to warrant the conclusion that Simpson was in control of his faculties.[1]

Viewing the totality of the evidence in the light most favorable to the state, reasonable jurors could properly have concluded that Simpson's intent to kill J.S. had been established beyond a reasonable doubt.

Simpson also contends that his sentence is excessive. First-degree murder is an unclassified felony punishable by a maximum term of ninety-nine years and by a minimum of twenty. AS 11.41.100; AS 12.55.125. Judge Souter sentenced Simpson to eighty-five years, characterizing his crime as "an incredibly brutal murder." Simpson nevertheless describes his conduct as verging on the lesser offense of second-degree murder and urges us to declare that a sentence approximating the twenty- to thirty-year benchmark range for the lesser offense[2] would have been appropriate.

The validity of Simpson's argument, however, hinges on his characterization of his conduct as resembling second-degree murder, a characterization rejected by the jury and the sentencing court alike. When an assault victim's death results from the wanton or reckless acts of the assailant, the assailant's conduct amounts to second-degree murder or manslaughter. *See* AS 11.41.110. Such cases are not unusual, and, since these forms of homicide, by definition, involve force that was not intended to be deadly, they are typically committed without the use of deadly weapons; they commonly involve beatings. But the mere fact that perpetrators of fatal beatings are often deemed to have committed second-degree murder or manslaughter hardly justifies the conclusion that Simpson's murder of J.S. more closely resembles second-degree murder than first-degree.

■ For Simpson's case is hardly typical. Unlike the typical assailant in a beating death, Simpson acted with specific intent. He was convicted by the jury and sentenced by Judge Souter not for reckless or wanton conduct but for the intentional killing of J.S. The record amply supports the conclusion that he committed a callous and deliberate homicide. Simpson's choice of weapon does not make his crime a second-degree murder. If there is any significance to be found, for sentencing purposes, in the particular method Simpson selected for murdering J.S.—his willingness, unmoved by repeated entreaties for mercy, to kill J.S. by means of a prolonged and unrelenting attack with his hands and feet—that significance lies in the remarkable brutality of Simpson's conduct and in the persistence Simpson displayed in achieving his criminal objective, factors favoring aggravated, not mitigated treatment.

Although Simpson is a first felony offender, his criminal history encompasses at least eight misdemeanor convictions, including three prior assaults. All three prior assault convictions were for domestic assaults, the most recent of which occurred within several months of the murder in this case and involved J.S. as the victim. On at least two prior occasions, Simpson's probation for these offenses was revoked as a result of his

---

1. Moreover, Simpson's argument regarding the effects of alcohol consumption relies on a misreading of the record. Simpson presented no evidence on this issue but points to testimony of an expert presented by the state, who indicated that the amount of alcohol Simpson claims to have consumed was eight times the necessary quantity to achieve a .10 alcohol level, the level at which a person becomes "significantly impaired." Simpson omits, however, the rest of the expert's sentence, which states that at .10 a "person is significantly impaired *for operating motor vehicles or other complex machinery.*"

(Emphasis added). The expert went on to say that intoxicated persons are capable of making conscious decisions, that an individual's ability to make decisions or form intent would be impaired "at or near that level where people pass out, .350," and that a person who consumes numerous drinks over a period of time but is capable of walking and communicating with others is capable of forming intent.

2. *See, e.g., State v. Krieger,* 731 P.2d 592, 595 (Alaska App.1987).

failure to participate in court-ordered rehabilitation programs.

Having independently reviewed the entire sentencing record, we conclude that the sentence imposed below was not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

The conviction and sentence are AFFIRMED.