**Artie R. COLLINS, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–6724.

Court of Appeals of Alaska.

April 9, 1999.

---

Rex Lamont Butler and Dan S. Bair, Rex Lamont Butler and Associates, Anchorage, for Appellant.

Marcelle K. McDannel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

STEWART, Judge.

Artie R. Collins was tried by a jury and convicted of two counts of fourth-degree misconduct involving a controlled substance,[1]

---

1. AS 11.71.040(a)(3)(A) and (a)(5).

one count of second-degree misconduct involving weapons,[2] and one count of third-degree misconduct involving weapons.[3] On appeal, he maintains that the superior court should have granted his motions for judgment of acquittal on each count. He also argues that evidence was erroneously admitted in two areas causing reversible error. For the reasons discussed below, we uphold Collins's convictions for possession of cocaine and possession of an altered firearm and reverse his convictions for maintaining a crack house and possession of a firearm during the commission of a felony drug offense.

### Facts and proceedings

On January 3, 1997, the Anchorage Police Department received an anonymous tip that drug sales were occurring at apartment # 10 of the Eagle's Nest Hotel. Police set up surveillance shortly thereafter and observed five or six people enter that apartment within a ten-minute period and leave after brief visits. The police obtained a search warrant for apartment # 10.

After 11:00 p.m., the police returned to apartment # 10 to execute the search warrant. David Washington opened the door and the officers entered. The apartment consisted of two bedrooms, a living room, a kitchen and a bathroom. Collins was found in the southwest bedroom. Kimberly Packer and Marilyn Medina were also in the apartment. Packer appeared to be either under the influence of cocaine or in cocaine withdrawal.

During the search pursuant to the warrant, the police seized two handguns from under the same side of the mattress in the southwest bedroom, one at the foot of the bed, the other at the head. The serial number on one handgun had been filed off. The altered handgun, an Acutec .380 caliber, was loaded with two live rounds. The other handgun, a 9-millimeter Inter Arms Firestar, was loaded with three live rounds. A box of .380 caliber bullets with two rounds removed was also found in the southwest bedroom in a green bag that also contained an eyeglass case and cards that had Collins's pager number and his alias, Stoney. Collins

wore eyeglasses. When interviewed, Collins admitted that the guns were his and that he had bought them on the street for $50. No usable fingerprints were found on either gun. Evidence was presented at trial that the usual purpose of removing a serial number from a gun is to render that gun untraceable.

In the closet in the southwest bedroom, the police seized a black day pack containing a crack pipe, scales, scissors, two plastic baggies, a piece of plastic wrap, and a bag. The scales were small, precise, electronic and commonly used for weighing cocaine. The scales had traces of cocaine on them. From that room, they also seized papers, a day planner, two cellular phones and two pagers. The day planner contained a paper that the police described as a drug-sale record. The planner was identified with the name "Stoney Mac," a name to which Collins answered, and the name of "Odessa Watson (Collins)," who was listed as "mother." The planner contained an entry to propose marriage to "Kimberly" on Christmas. Packer's fingerprints (but not Collins's) were found on the planner. Records from the Personal Page showed that a pager belonging to Collins had received more than 1,000 calls in one month. Police seized $197 from Collins.

The police also seized various items, including a piece of a coat hanger, a straw, a knife, and a M & M container with a white residue from the living room area. The north bedroom yielded a scale inside a garbage bag. Police also found a copper pipe with a piece of Chore Boy, a test tube with another piece of Chore Boy, and two small containers in the north bedroom. A broken "crack pipe" was found in the kitchen. Collins told police that he resided in apartment # 10.

At trial, Collins, Medina, Packer, and Washington did not testify. Collins objected to the admission of two purported "drug ledgers," one found in the day planner, and the other found elsewhere in the southwest bedroom. He also objected to Judge Souter's decision to permit certain police officers to testify as experts. Judge Souter overruled those objections. At the end of the

2. AS 11.61.195.

3. AS 11.61.200(a)(6).

case, Collins moved for a judgment of acquittal on every count. Judge Souter denied his motions.

### Discussion

#### Testimony of police officers as experts

On appeal, Collins maintains that evidence from two police officers was erroneously admitted over his objection.

■ Officer Pam Nelson was asked why a serial number would be removed from a firearm. Collins objected that the answer called for speculation. After that objection was overruled, Nelson testified that a serial number might be removed from a firearm to render it untraceable. Collins renews his argument that the testimony was speculative. We conclude that Judge Souter did not abuse his discretion when he permitted that testimony over Collins's objection.[4] Officer Nelson's testimony based on her experience and training with handguns was not speculative.

Collins now maintains that Officer Nelson offered expert testimony without proper qualification by the court to testify as an expert witness. But Collins did not make that objection to Officer Nelson's testimony in the trial court. Therefore, he did not preserve that issue for appeal.

Collins also objected to certain questions put to Detective Bruce Bryant on the basis that his answers would lack foundation, be speculative, irrelevant, or would call for hearsay. Collins also objected to the State's question posed to Detective Bryant regarding what consistencies he noted between this case and other "crack houses" he had seen in the past.

DEFENSE COUNSEL: I'm going to object as to discovery.
THE COURT: Object as to discovery?
DEFENSE COUNSEL: Yes, sir.
THE COURT: I didn't hear where that called for any sort of discovery. The objection is overruled.

Collins did not raise the issue again, nor did he ask for any form of relief.

■ On appeal, Collins argues that Detective Bryant's testimony about the similarity of other crack houses to the Eagle's Nest apartment was expert testimony that was presented without notice or discovery under Criminal Rule 16. He asserts that Alaska Rule of Criminal Procedure 16(b)(1)(B) required discovery of this testimony.[5] But it is not clear to us that Criminal Rule 16(b)(1)(B) applies to police officers, like Bryant, who testify to their on-the-scene observations and conclusions based on their training and experience. Even so, Collins did not articulate to the trial court how the purported discovery violation prejudiced his defense.[6] Nor did he ask for any specific relief other than objecting to the question put to Bryant. Collins argues that Judge Souter implicitly denied all relief, including a request for a continuance, when he overruled the objection as to discovery. We disagree.

■ If the defense claims a mid-trial discovery violation, the defendant must present the trial court with a plausible claim of prejudice and request appropriate relief. If a continuance is not requested for a purported discovery violation, this ordinarily waives any claim that a continuance should have been granted.[7] Collins did not request any

---

**4.** See *Hawley v. State*, 614 P.2d 1349, 1361 (Alaska 1980).

**5.** Criminal Rule 16(b)(1)(B) provides:

(B) *Expert Witnesses.* Unless a different date is set by the court, as soon as known and no later than 45 days prior to trial, the prosecutor shall inform the defendant of the names and addresses of any expert witnesses performing work in connection with the case or whom the prosecutor is likely to call at trial. The prosecutor shall also make available for inspection and copying any reports or written statements of these experts. With respect to each expert whom the prosecution is likely to call at trial, the prosecutor shall also furnish to the defendant a curriculum vitae and a written

description of the substance of the proposed testimony of the expert, the expert's opinion, and the underlying basis of that opinion. Failure to provide timely disclosure under this rule shall entitle the defendant to a continuance. If the court finds that a continuance is not an adequate remedy under the circumstances of the case, the court may impose other sanctions, including prohibiting the prosecutor from calling the expert at trial or declaring a mistrial.

**6.** See *Bostic v. State*, 805 P.2d 344, 348–49 (Alaska 1991); *Jurco v. State*, 825 P.2d 909, 916–17 (Alaska App.1992).

**7.** See *Scharver v. State*, 561 P.2d 300, 302 (Alaska 1977).

specific relief to address the purported discovery violation. We conclude that this issue was waived.

### Admission of day planner and drug ledgers

■ Collins next argues that certain documents admitted at trial, a day planner and the two sheets of paper described as drug ledgers, were erroneously admitted over his hearsay objection. He claims the State offered the exhibits for the truth of the matter asserted. The two sheets were described by the court as "a list of numbers and names, and from that the jury can reasonably draw an inference that it's a list of customers[.]" Collins also claims that the papers were admitted without sufficient foundation, that is, that there was inadequate proof that Collins authored the documents. He also argues that the documents were not admissible under the business record exception to hearsay.[8] Judge Souter admitted the documents not for the truth of the matter asserted, but as relevant circumstantial evidence of drug transactions occurring on the premises. In other words, the documents were circumstantial evidence that controlled substances were distributed in the Eagle's Nest apartment.

Collins relies on *United States v. Arteaga*,[9] as support for his argument. In *Arteaga*, the trial court admitted "to-send-money" and "to-receive-money" forms from Western Union in a money-laundering scheme where proceeds of cocaine sales in Alaska were wired to California. The district court first admitted the forms under Federal Rule of Evidence 803 as business records and later stated that the forms were admissible under the catch-all hearsay exception because the forms had circumstantial guarantees of trustworthiness. In the face of objections from the defendants in the case, the district court ultimately ruled that the forms were admitted not for the truth of the matters on the forms. The *Arteaga* court recognized that that ruling eliminated the hearsay objections and recognized that the forms at issue in that case that were found in Arteaga's home were circumstantial evidence of the charged criminal conduct.[10]

Although Collins argues that the documents in question were admitted for the truth of the matter asserted, that was not Judge Souter's announced ruling. The documents in question here were admitted as circumstantial evidence of cocaine transactions on the premises.

Many courts have allowed the introduction of "drug ledgers" not for the truth of the entries on the ledgers, but as circumstantial evidence that drug-related activities were occurring on the premises where the records were found. In *United States v. Wilson*, the court ruled that certain records that were found on the premises where the prosecution alleged that drug trafficking was occurring were admissible as circumstantial evidence that drug trafficking was occurring on the premises.[11] "The evidence, however, did tend to show that the apartment was being used for drug trafficking."[12] Also, in *United States v. Jaramillo–Suarez*,[13] the court, following *Wilson*, approved the introduction of "pay/owe" sheets as circumstantial evidence of drug trafficking in the apartment where they were found:

> The pay/owe sheet in the present case was admitted for the specific and limited purpose of showing the character and use of the [ ] apartment.... Because the pay/owe sheet's probative value for the limited purpose for which it was admitted was independent of the truth of its contents, the rule against hearsay was not implicated[.][14]

Similarly, in *United States v. Enriquez–Estrada*,[15] the court approved the introduction of a drug ledger to show the nature of the

---

8. Alaska Rule of Evidence 803(6).

9. 117 F.3d 388 (9th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 455, 139 L.Ed.2d 390 (1997).

10. *See id.* at 397–98.

11. *See Wilson*, 532 F.2d 641, 645–46 (8th Cir. 1976).

12. *Id.*

13. 950 F.2d 1378 (9th Cir.1991).

14. *Id.* at 1383.

15. 999 F.2d 1355 (9th Cir.1993).

use of the residence where the ledger was found.[16] And in *People v. Harvey*,[17] the court upheld the non-hearsay use of drug ledgers found in homes connected to the defendants as circumstantial evidence of cocaine sales and a cocaine conspiracy.[18]

We conclude that it was not an abuse of discretion for Judge Souter to admit the contested documents as circumstantial evidence of drug activity because the issue of trafficking in controlled substances is a material issue to count II.

■ Collins raises another issue relating to the documents in question. He argues that during the prosecutor's final argument, the prosecutor used information in the drug ledgers for the truth of the matter asserted. Because the prosecutor purportedly used that information for the truth of the matter asserted when it was not admitted for the truth of its contents, Collins argues that his conviction should be reversed. He relies on *United States v. Lai*.[19]

In *Lai*, the trial court admitted the drug records as circumstantial evidence of Lai's alleged criminal drug activity. But in *Lai*, the government conceded that the documents were used to prove particular drug transactions that were elements of the conspiracy count that was charged. The *Lai* court concluded that the records were hearsay and proper foundations for the records were required.[20] Because the district court had not addressed the foundation for admission of the records as hearsay, the court did not reverse Lai's conviction, but remanded the case to the district court for a hearing on whether there was a proper basis for the admission of those records.[21]

Collins has not claimed nor has the State conceded that the use of the documents in question for the truth asserted in the documents was necessary to establish an element of one of the charged counts. And Collins never objected to any portion of the prosecutor's argument. Because he did not object to the claimed misuse of the evidence during argument, he has not preserved that issue for appeal. Finally, Collins has not claimed that the prosecutor's final argument created plain error.

### Sufficiency of the evidence

■ Collins claims that Judge Souter erred when he denied his motion for judgment of acquittal on each count. When a defendant attacks a conviction for insufficiency of the evidence, we must view the evidence presented, and reasonable inferences from the evidence, in the light most favorable to upholding the jury's verdict.[22] Viewing the evidence from this perspective, we must decide whether a fair-minded juror exercising reasonable judgment could conclude that the State met its burden of proving guilt beyond a reasonable doubt.[23]

### Possession of cocaine

■ Collins stipulated that there was cocaine residue on various items in the apartment, including on the scales, on various crack pipes, and on other paraphernalia found in his residence. The police described the various items of paraphernalia found around the apartment that were typically used for marketing cocaine and crack cocaine. In addition, the prosecution presented evidence that Collins had a pager through Personal Page on which he had received more than a thousand pages in a month. The prosecution showed the jury the cards that had the pager number issued to Collins along with his alias, Stoney Mac. The two loaded handguns (that Collins admitted were his) were found under the mattress of the bed in the room where Collins was found when the police entered. The prosecution presented testimony that it was consistent with the retail distribution of cocaine to have readily available firearms.

16. *See id.* at 1360.

17. 233 Cal.App.3d 1206, 285 Cal.Rptr. 158 (1991).

18. *See id.* at 167–68.

19. 944 F.2d 1434 (9th Cir.1991).

20. *See id.* at 1445.

21. *See id.*

22. *See Simpson v. State*, 877 P.2d 1319, 1320 (Alaska App.1994).

23. *See Dorman v. State*, 622 P.2d 448, 453 (Alaska 1981) (citations omitted).

While most of the evidence that was presented relating to this count was circumstantial, the jury was entitled to make reasonable inferences from that evidence and conclude that Collins possessed cocaine. While it was also possible for the jury to infer that other occupants of the apartment were the ones who possessed the cocaine, and not Collins, the jury was permitted to reject those conclusions and agree that the prosecution had proven the count beyond a reasonable doubt.

*Keeping or maintaining a "crack house" and possession of a firearm during commission of a felony drug offense*

We conclude that Collins's conviction on these counts must be reversed for the reasons expressed in Judge Mannheimer's concurring opinion.

*Possession of an altered firearm*

■ Finally, Collins maintains that there was insufficient evidence to show that he knew that the handgun with the serial number removed had been altered with intent to render it untraceable. As we noted above, Collins admitted that the two handguns were his. He also said that he purchased both handguns "on the street" for $50. The altered handgun was admitted into evidence and the jury was allowed to examine where the serial number had been obliterated. The prosecution also presented evidence from two police officers that the removal of a serial number from a weapon exhibited an intent to render that firearm untraceable.

Collins maintains that the State was required to present evidence that he possessed the handgun with the specific intent that the weapon be untraceable. We disagree. Alaska Statute 11.61.200(a)(6) provides that a person commits third-degree weapons misconduct when the person:

possesses a firearm on which the manufacturer's serial number has been removed, covered, altered, or destroyed, knowing that the serial number has been removed, covered, altered, or destroyed with the intent of rendering the firearm untraceable[.]

Under this statute, the State must prove, first, that someone had removed the serial

number with the intent to render the firearm untraceable, and, second, that Collins acted "knowingly" [24] with respect to this circumstance.

From our review of the record, we conclude that reasonable jurors could agree that the prosecution had proven this count beyond a reasonable doubt. Collins purchased both handguns, including the altered handgun, on the street from a person he did not know for $50. The jury was entitled to infer that he loaded the altered handgun and hid it under the mattress in the bedroom. The jury also had the testimony that a purpose for the obliteration or removal of a serial number on a firearm is to render the firearm untraceable and could infer from the circumstances of Collins's purchase and possession of the handgun that he knew the serial number had been removed from the firearm in order to render it untraceable.

*Conclusion*

For the reasons explained here, we AFFIRM Collins's convictions for possession of cocaine and possession of an altered firearm. We REVERSE his conviction for maintaining a crack house and REMAND for entry of a judgment of acquittal on that count. We REVERSE Collins's conviction of possession of a firearm during the commission of a felony drug offense and REMAND for a new trial on that count.

MANNHEIMER, Judge, concurring.

Two of Collins's convictions must be reversed: his conviction under AS 11.71.040(a)(5) for maintaining a structure used for storing or distributing controlled substances (the "crack house" statute), and his conviction under AS 11.61.195(a)(1) for possessing a firearm during the commission of a felony drug offense.

Collins's conviction for maintaining a crack house must be reversed because the State failed to present sufficient evidence to support a finding that Collins controlled the motel suite where he and the drugs were found. Collins's conviction for possessing a firearm during the commission of a felony

---

**24.** *See* AS 11.81.900(a)(2).

drug offense must be reversed because the jury was not instructed (and thus made no finding) concerning an essential element of this offense: the requirement of a nexus between the defendant's possession of the firearm and the defendant's commission of the drug felony.

### The conviction for maintaining a building used for storing or distributing controlled substances

■ The crack house statute, AS 11.71.040(a)(5), requires proof that the defendant kept or maintained some type of "structure" for storing or distributing controlled substances. The statute declares that a person commits the offense if he or she:

knowingly keeps or maintains any store, shop, warehouse, dwelling, building, vehicle, boat, aircraft, or other structure or place that is used for keeping or distributing controlled substances in violation of a felony offense under [AS 11.71] or AS 17.30[.]

The indictment against Collins charged him with maintaining a "dwelling or building". The State's theory was that Collins kept or maintained the motel room (really, a motel suite) where he and his three housemates were living and where the drugs were found.

■ This motel suite was both a "dwelling" and a "building" as these terms are defined in AS 11.81.900(b). Under AS 11.81.900(b)(20), "dwelling" means a particular kind of building—"a building that is designed for use or is used as a person's permanent or temporary home or place of lodging". And, under the definition of "building" contained in AS 11.81.900(b)(3), each separate apartment or office in a multi-unit structure is considered a "building".

The motel suite shared by Collins and his housemates was a separate apartment in a multi-unit structure. Thus, if the State had proved that Collins controlled that motel suite, this would have been sufficient proof that Collins kept or maintained a "building" and a "dwelling".

But the State failed to prove this. The State's evidence showed that Collins lived in the motel suite—but it also showed that three other people lived in the suite. The State did not produce rent receipts, a lease, or any other evidence to show that Collins (or any of the other three housemates, for that matter) had either legal or actual authority to control the premises—authority to decide who would reside there and to control what occurred on the premises.

When Collins moved for a judgement of acquittal on this charge, Judge Souter recognized this flaw in the State's evidence. Addressing the prosecutor, Judge Souter said:

[T]he question I've got here is the "keeping and maintaining" [element of the offense].... [I]n order to prove that [element], the State ... has to show that the defendant controlled or had the right to control the premises. And, other than his [statement] that he lived there, what else is there, [Mr. Prosecutor]?

In response to the judge's question, the prosecutor presented two arguments.

The prosecutor first argued that the State did not have to prove that Collins had sole control of the motel suite; it would be sufficient if he exercised joint control with one or more of his housemates. This may be correct, but it does not help the State's position because the State failed to present evidence of *anyone's* control of the premises.

The prosecutor next argued that, even if the State failed to prove who controlled the motel suite, the State's evidence did tend to show that drugs had been stored and distributed in the south bedroom of the suite, the bedroom where Collins slept. The prosecutor contended that the State's case could go to the jury under the theory that Collins "controlled" the south bedroom.

Judge Souter accepted this second argument:

Well, ... the hotel room ... was really a hotel suite, not just a room.... [T]he testimony [shows that] there were two bedrooms and a living area. So it's a hotel suite. And there were four people [living] there ..., the defendant and three others. And the only testimony that ties the defendant to the [premises] is the testimony of the police that he was found ... in the south bedroom, where a number of his personal belongings ... were [also] found. And his statement that he lived there.

I've got to draw all reasonable inferences in favor of the State.... [G]iven the fact that he had his personal belongings in there, including some guns that were under the mattress, it's pretty apparent that he was controlling the bedroom. I mean, ... he had his stuff in there, and two guns under the mattress.... [That is] evidence from which the jury could reasonably infer that he was in control of the room.... [S]o I'm going to deny the motion for judgement of acquittal[.]

This ruling was error.

The first difficulty in the State's "bedroom" theory is that Collins's physical occupancy of the south bedroom does not amount to the legal control required by the crack house statute. Whoever was leasing or renting the motel suite would normally "control" all rooms and areas within the suite (in the sense of having the legal authority to decide who lived there and what went on there). The State presented no evidence as to the identity of the person or persons who leased or rented the motel suite. By the same token, the State presented no evidence that Collins had a subleasing agreement with the unidentified lease-holder of the suite. The mere fact that Collins lived in the south bedroom did not place him in "control" of that bedroom.

■ Equally important, even if the State's evidence had established that Collins exercised legal control over the south bedroom, this would not be sufficient to prove a violation of the crack house statute. The statute requires proof that the defendant kept or maintained a "structure"—in Collins's case, the "dwelling" or "building" cited in the indictment. As explained above, apartments and motel suites are "buildings" and "dwellings" for purposes of Title 11. But the separate bedrooms within apartments and motel suites are not.[1]

Judge Souter should have granted Collins's motion for judgement of acquittal. Instead, he allowed this charge to be presented and argued to the jury under an improper legal theory.

■ On appeal, the State pursues a different theory to justify Collins's conviction. The State argues that Collins "controlled" the motel suite because he was a drug dealer living among drug addicts, and because he was the only resident who possessed firearms. From this, the State concludes that Collins was socially dominant among the four residents of the suite: he could manipulate the others by cutting off their supply of cocaine, and he could exercise "brute authority to have the final word in any discussion with [his] unarmed [housemates]".

Whether Collins "controlled" his housemates in this fashion is irrelevant. The crack house statute requires proof that Collins kept or maintained the *premises*—the motel suite. As we held in *Dawson v. State*, this statute requires proof that the defendant "control[led] or ha[d] authority to control the use or occupancy of the structure".[2]

One can speculate that Collins was in a position to exercise physical or psychological control over his three housemates, to the point where they would acquiesce in whatever he chose to do in his bedroom. But this would be only speculation, for the State raises this factual issue for the first time on appeal. The State did not argue its case this way at trial, and the jury was not asked to convict Collins under this theory. Moreover,

---

1. One could conceivably argue that, because AS 11.71.040(a)(5) speaks of "any ... structure or place", the statute may have been intended to apply to individual rooms within apartments or motel suites. However, given the list of structures and places included in AS 11.71.040(a)(5), this does not appear to be a likely construction of the statute.

This issue of statutory interpretation need not be addressed for two reasons. First, the State does not raise this argument on appeal. Second, the jury instructions in Collins's case did not allow the jury to convict him under the theory that he kept or maintained a "place" as opposed to a "structure". Instruction 16(a) told the jury:

> A person keeps or maintains a building, dwelling[,] or other structure or place if: 1) the person knowingly uses or allows another to use the building, dwelling[,] or other structure for a business operation involving the keeping or distributing of one or more controlled substance[s]; 2) the keeping or distributing of the controlled substance(s) is a felony in violation of AS 11.71; and 3) the person, either alone or with others, controls or has the right to control the building, dwelling[,] or other structure[.]

2. 894 P.2d 672, 676 (Alaska App.1995).

even if Collins had exercised physical or psychological dominance over the other three residents of the motel suite, this does not establish that Collins "ke[pt] or maintain[ed]" the premises—the element of proof required by the crack house statute.

For these reasons, we conclude that Collins's conviction for violating the crack house statute must be reversed.

### The conviction for possessing a firearm during the commission of a drug felony

Collins was charged with violating AS 11.61.195(a)(1), which prohibits a person from "possess[ing] a firearm during the commission of an offense under AS 11.71.010—11.71.040". The State presented evidence that Collins possessed cocaine and that Collins had two firearms hidden under his mattress—facts that seemingly established a violation of the statute.

The jury was indeed instructed that this evidence, by itself, was sufficient to establish a violation of the statute. Jury Instruction 17 told the jury that, to prove a violation of AS 11.61.195(a)(1), the State had to establish only the following two elements:

First, that the event in question occurred at or near Anchorage and on or about January 3, 1997; and

Second, that Artie R. Collins knowingly possessed a firearm during the commission of a felony drug offense as ·charged in Counts I and II of the indictment.

The felony drug offenses named in Counts I and II of the indictment were: (1) possessing cocaine, and (2) keeping or maintaining a dwelling or building for storing or distributing controlled substances. The jury instructions contained no further explanation of the phrase "during the commission of a felony drug offense".

After the jury convicted Collins of this crime, Collins filed what he called a motion for "judgement of acquittal". Collins argued that mere possession of a firearm during the commission of a drug felony was not sufficient to establish a violation of AS 11.61.195(a)(1). Rather, Collins argued, the statute required proof of some connection between the firearm and the drug offense.

### (a) Proper characterization of Collins's motion

█ It is important to note that Collins's motion was not actually a "motion for judgement of acquittal"—even though Judge Souter and both parties referred to it by this label in the trial court, and even though both parties continue to refer to it this way on appeal. Collins's basic contention was—and is—that the offense of possessing a firearm during the commission of a felony drug offense requires proof of one additional element: a nexus between the weapon and the drug offense. This element was not alleged in the indictment, and the jury instructions made no mention of it; thus, the jury never decided this asserted element of the offense.

If Collins is correct, then he is entitled to dismissal of the indictment and a new trial, but he would not be entitled to a judgement of acquittal. This is true because, had Judge Souter granted Collins's motion, this would have been a dismissal on legal grounds—that is, dismissal on a ground not requiring factual resolution of any of the elements of the offense. Such a dismissal "does not amount to a judgment of acquittal, regardless of its timing or the label attached thereto." *State v. Martushev.*[3]

For example, in *Steve v. State*[4], a defendant filed a post-trial "motion for judgement of acquittal" after he was convicted of second-degree sexual abuse of a minor (having sexual relations with a child under the age of 16). At trial, Steve had asserted the affirmative defense of reasonable mistake: he claimed that he reasonably believed his sexual partner was older than 16. The jury rejected this affirmative defense. In his post-trial motion, Steve asserted that he had been denied due process because the jury instructions (in accord with the statute) required him to prove this defense by a preponderance of the evidence. Steve claimed that, as a matter of constitutional law, it was the government's burden to disprove his asserted defense beyond a reasonable doubt.[5]

3. 846 P.2d 144, 148 (Alaska App.1993).

4. 875 P.2d 110 (Alaska App.1994).

5. *See id.* at 114–15.

We held that, because Steve was attacking his conviction on a legal ground that did not require resolution of any of the facts of the case, his pleading was not a "motion for judgement of acquittal", and the granting of his motion would not preclude the State from re-trying him:

> [I]f the defendant convinces an appellate court that the trial court adopted an erroneous definition of the offense or misallocated the burden of proof, this conclusion necessarily undermines the assumption that the government had its fair day in court. We can not know what evidence the State might have presented at [the defendant's] trial if it had known [the true elements of the offense or that] the State bore the burden of proof on the [disputed] issue[.]

*Steve,* 875 P.2d at 115. Thus, if the defendant prevails on such a motion, the defendant is "entitled to a new trial, not an outright acquittal".[6]

The holdings in *Martushev* and *Steve* apply to Collins's "motion for judgement of acquittal". Collins's argument concerned the legal definition of the offense; in essence, he claimed that the indictment failed to allege each essential element of the crime and that the jury was not asked to decide each essential element. Thus, if Collins prevailed in his motion, the State would be able to re-indict and re-try Collins, attempting to establish this additional element of the crime.

### (b) Proper resolution of Collins's claim

When Collins's motion was first argued, Judge Souter expressed preliminary agreement with Collins's construction of the statute. The judge declared that he did not think the legislature intended to inflict separate felony punishment on people who possessed or used drugs at one location (for example, in a restaurant or at a cabin) and who happened to possess a firearm at home. Nevertheless, Judge Souter took the matter under advisement. He invited the parties to file supplemental briefs on (1) the meaning of the statute and (2) how the State's evidence at Collins's trial either established or failed to establish a violation of the statute.

In its supplemental brief, the State conceded that Collins and Judge Souter were right: the statute required more than simply proof that a person possessed cocaine and simultaneously owned a firearm. The State admitted that AS 11.61.195(a)(1) required proof of some nexus between the firearm and the drug offense. However, relying on federal cases, the State argued that the statute did not necessarily require proof that the defendant used or threatened to use the firearm during the drug offense. Rather, the State argued, the offense could be established by proof that, because a firearm was nearby and available, the defendant was "emboldened" to commit the felony drug offense. The State further argued that, viewing the evidence at Collins's trial in the light most favorable to the State, this required nexus was proved in Collins's case—because the evidence suggested that Collins dealt drugs in the bedroom where the firearms were found.

Based on the arguments presented in the State's supplemental brief, Judge Souter denied Collins's motion for judgement of acquittal.

Judge Souter's ruling is troublesome. In the State's supplemental brief to Judge Souter, the State conceded that the crime required proof of an additional element—proof of a nexus between the firearm and the felony drug offense. Even assuming that the State presented enough evidence at Collins's trial to prove this additional element, the fact remains that the indictment did not allege this element, the jury was never instructed on this element, and the jury made no finding with regard to it. Because of this, Collins's conviction was flawed.[7] Although Collins was not entitled to a judgement of acquittal, Judge Souter's ruling nec-

---

6. *Id.*

7. A trial judge is under a duty to instruct the jury on all essential elements of the offense. *See Thomas v. State,* 522 P.2d 528, 531 n. 11 (Alaska 1974); *Sears v. State,* 713 P.2d 1218, 1219 (Alaska App.1986). It is plain error when instructions fail to inform the jury of all the essential elements of an offense, unless the record as a whole establishes that the incomplete jury instructions had no significant influence on the jury's decision. *See S.R.D. v. State,* 820 P.2d 1088, 1095–96 (Alaska App.1991).

essarily meant that Collins was entitled to dismissal of the indictment and a new trial.

Now, on appeal, it appears that the State has recognized this problem. In its brief to this court, the State disavows the construction of the statute adopted by the trial prosecutor and by Judge Souter. The State claims that no nexus must be proved between the firearm and the drug felony; instead, the State argues that the offense is committed whenever someone simultaneously commits a drug felony and possesses or exercises control over a firearm—even a firearm located in another place. According to the State, "[t]he only nexus required by the statute is one [of] time: possession [of the firearm] must coincide at some point in time with the commission of a felony drug offense."

We find ourselves in agreement with Judge Souter and the trial prosecutor on this issue. Possession of cocaine is a felony drug offense—a class C felony, carrying a maximum penalty of 5 years' imprisonment.[8] Possession of a firearm during the commission of a felony drug offense is a more serious crime; it is a class B felony, carrying a maximum penalty of 10 years' imprisonment.[9] Even though the wording of AS 11.61.195(a)(1) could be interpreted in the fashion urged by the State in this appeal, it seems quite unlikely that the legislature intended to double or, if the defendant receives consecutive sentences, even triple the penalty for possession of cocaine whenever a cocaine user also happens to be a gun owner.

When interpreting statutes, it is this court's duty to shun interpretations that lead to absurd results.[10] We agree with Judge Souter that, unless AS 11.61.195(a)(1) is interpreted to require some nexus between the possession of the firearm and the commission of the felony drug offense, the statute leads to inexplicably draconian penalties for run-of-the-mill drug possession offenses.

For these reasons, we conclude that AS 11.61.195(a)(1) requires proof of a nexus between a defendant's possession of the firearm and the defendant's commission of the

felony drug offense. We need not define the exact contours of this required nexus at this time. To resolve Collins's appeal, it is sufficient to note that the indictment returned against Collins did not allege this element of the offense and the jury at Collins's trial made no finding with respect to this element. Collins's indictment and conviction for possessing a firearm during the commission of a drug felony must therefore be reversed.

---

8. AS 11.71.040(a)(3)(A), AS 11.71.040(d), AS 11.71.150(c), AS 12.55.125(e).

9. AS 11.61.195(a)(1), AS 11.61.195(b), AS 12.55.125(d).

10. *See Millman v. State*, 841 P.2d 190, 195 (Alaska App.1992).