54 P.3d 821 (2002)
Bruce L. MURRAY, Appellant,
v.
STATE of Alaska, Appellee.
No. A-7210.
Court of Appeals of Alaska.
September 13, 2002.
Paul E. Malin, Assistant Public Defender, Barbara K. Brink, Public Defender, Rex Lamont Butler and Dan S. Bair, Rex Lamont Butler and Associates, Anchorage, for Appellant.
Marcelle K. McDannel, Assistant District Attorney, Susan A. Parkes, District Attorney, *822 W.H. Hawley, Jr., Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.
Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

OPINION
STEWART, Judge.
In 1998, Bruce L. Murray was convicted of second-degree weapons misconduct for knowingly possessing a firearm during the commission of a felony drug offense.[1] When this case was last before us, we remanded for the superior court to consider whether the State had proven a nexus between Murray's possession of a .44 magnum handgun and his commission of two felony drug offenses (possessing an ounce or more of marijuana with intent to distribute[2] and maintaining a building for keeping or distributing controlled substances[3]).
Murray argues that Superior Court Judge Larry D. Card erred in finding the required nexus on remand. He contends that Judge Card's decision rests on a clearly erroneous factual finding and that Judge Card applied an incorrect legal standard. We agree that the factual finding Murray attacks is clearly erroneous. We remand for reconsideration.

Facts and proceedings
In our previous decision, we discussed the facts of Murray's case at length.[4] On August 13, 1997, officers responded to Murray's hotel room looking for a dead body. Although the officers did not find a body, Murray told the officers that his girlfriend, Jeannie Joy, was in possession of cocaine and was driving around town in his Chevy Blazer. When the officers stopped Joy in the Blazer, they contacted Murray, and he consented to a search of the Blazer. During the search, the officers found marijuana and a crack pipe. Murray later arrived at the scene and told the officers that he had given Joy the marijuana to sell and that he had about a quarter pound of marijuana and a handgun at his residence.
The officers obtained a search warrant for Murray's residence and found: (1) a bag containing 170.9 grams (approximately 6 ounces) of "bud" marijuana in a living room closet; (2) a gram scale and a screening tin (used to separate "bud" from "shake") in the kitchen; (3) marijuana residue in a bedroom drawer and on the screening tin; (4) a loaded.44 magnum handgun inside a fur-lined case in the bedside table drawer; and (5) a gun cleaning kit and boxes of ammunition in a bucket in the bedroom. The officers later found a marijuana "bud" in the handgun case.
Murray was tried in a bench trial before Judge Card. In ruling that Murray committed second-degree misconduct involving a weapon,[5] Judge Card noted:
[A]t one time, a firearm anywhere near a quantity of drugs was sufficient. But the [Court] of Appeals [has] reversed that. And ... it appears that there should be at least some logical relevance. And in this case, the place where the drugs were located was also the place where the firearm was located. It's not like the firearm was here in Anchorage and the drugs were in Kenai or Denali or in the back of a car. And so there was a logical correlation, even though [Murray made] statements that there had been ... a burglary .... One['s] stash of marijuana is a valuable item, and people have been known to break into homes and places where they are kept; ... committing robberies, committing murders to get those drugs or ask[ing] for those or demanding those drugs and any money. So, the firearm was a necessary component.
Murray appealed on several grounds, and we remanded the case so that the trial court could enter specific findings on whether a nexus existed between Murray's possession *823 of the firearm and Murray's commission of the drug offenses.[6]
On remand, the superior court noted that its original factual findings were intended to address the nexus issue and incorporated its original findings into the remand order. The court also emphasized the following facts:
The marijuana itself had been found in a closet of the same bedroom [as the gun] and Mr. Murray indicated that he had personally bought the gun to protect the home since the home had been burglarized.... [H]e was purchasing it by inference... for the safety of his marijuana, his weighing materials, and the fact that he was effectively trying to keep safe his stash of marijuana.
....
There's no question [that] the role of the handgun is not active in that he is not actively putting the gun into play by ... wearing it at the time he is conducting a drug transaction, but it's more passive in that it emboldens him to maintain his marijuana possession and the amount which he is possessing in his home. It helps make his home more secure to keep the marijuana in his possession....
The substantial amount of drugs in this instant case as well as Mr. Murray's status as a felon leads the court to believe that the nexus requirement is met beyond a reasonable doubt
...

Discussion
Before turning to the appropriate legal standard in this case, we address Murray's challenges to the superior court's factual findings on remand. We uphold a trial court's factual findings unless they are clearly erroneous.[7]
Murray first challenges the superior court's finding that both the marijuana and the firearm were located in the master bedroom. In its memorandum, the State concedes that the superior court "mistakenly mentioned that the drugs were found in Murray's bedroom closet, rather than in a living room closet." Having reviewed the trial record, we agree with the State's concession. Anchorage Police Officers Kevin Iverson and Steven Hebbe testified during the trial that they recovered the marijuana from the living room closet and that they recovered the gun from a bedside table drawer in the master bedroom. The trial court's finding that both the drugs and the firearm were located in the bedroom was clearly erroneous.[8] Because the proximity of the firearm to the drugs is relevant to the trial court's nexus finding, we remand for reconsideration of the nexus issue.
Murray also challenges the superior court's factual finding that Murray possessed approximately half a pound of marijuana instead of 170.9 grams. Although we do not believe this distinction affected the court's ultimate ruling on the nexus issue, we note for purposes of remand that the parties stipulated at trial that Murray possessed 170.9 grams, approximately six ounces, of marijuana.
Turning to the nexus issue, we believe the superior court also may have applied an incorrect legal standard in finding the nexus in this case. Alaska Statute 11.61.195(a)(1) provides that a person commits the crime of second-degree misconduct involving weapons if the person knowingly "possesses a firearm during the commission of [misconduct involving a controlled substance in the first-, second-, third-, or fourth-degree]." In Collins v. State,[9] we stated that AS 11.61.195(a)(1) "requires proof of a nexus between a defendant's possession of the firearm and the defendant's commission of the felony drug offense."[10] However, we did not define the exact contours of the required nexus.[11] To assist the court on remand, we will provide more explicit guidance.
*824 In its brief, the State argues that there is always a sufficient nexus under AS 11.61.195(a)(1) when someone possesses drugs and a firearm in close physical proximity. Several state courts also have focused on the physical proximity of the drugs and the firearm in construing statutes similar to AS 11.61.195(a)(1). Some states assume a nexus between the firearm and the drugs if the offender was in actual possession of the firearm during the offense but require proof of a nexus if the offender only had constructive possession of the firearm during the offense.[12] Other states require that the defendant be in actual possession of the firearm during the commission of the offense as an additional requirement or a substitute to the nexus requirement.[13] For example, in Gardner v. State,[14] the Delaware Supreme Court held that the elements of possessing a firearm during the commission of a felony offense were not satisfied as a matter of law because the gun was found in the bedroom, the drugs were found in the basement and living room, and the State did not introduce any evidence that the drugs seized were ever in the bedroom or that the bedroom was ever the scene of drug trafficking.[15] Accordingly, the defendant did not actually possess the firearm "during the commission of a felony."[16]
In analyzing our nexus requirement, we note that a test based solely on physical proximity would allow convictions under AS 11.61.195(a)(1) of those who commit a drug offense in their residence and also possess in their residence a locked antique gun, an unloaded hunting rifle, or a firearm for the general protection of the residence. We do not believe this was the intent of the legislature. Instead, we believe that, in enacting AS 11.61.195(a)(1), the legislature intended to penalize those who possess a firearm in furtherance of a drug offense. Accordingly, to establish the nexus that we required in Collins, the State must prove that the defendant's possession of the firearm aided, advanced, or furthered the commission of the drug offense. Possession of drugs and a firearm alone is insufficient for such a findingeven if the drugs and firearm were located in close physical proximity.
However, while the physical proximity of a firearm to drugs, with nothing more, is insufficient to support a nexus finding, the fact-finder may consider physical proximity when determining whether the State has proven that a firearm was possessed in furtherance of a drug offense. Federal circuit courts have identified the following factors as relevant in deciding whether a firearm was possessed in furtherance of a drug offense: (1) the type of drug activity conducted, (2) the accessibility of the firearm, (3) the type of firearm, (4) whether the firearm was stolen, (5) the status of the defendant's possession (legitimate or illegal), (6) whether the firearm was loaded, (7) the proximity of the firearm to drugs or drug profits, and (8) the time and circumstances under which the gun was found.[17] We agree that these factors might be relevant to a nexus determination under AS 11.61.195(a)(1). However, we caution courts not to apply them in a mechanical manner. We do not intend these factors as an exhaustive list, and we only recognize them as relevant to the extent that they show the defendant's possession of the firearm aided, advanced, or furthered the commission of the drug offense.
*825 In his original findings, Judge Card concluded that the required nexus between the firearm and Murray's possession of the marijuana was established by the fact that the firearm and the drugs were located in the same house. But this, without more, is insufficient to establish the nexus.
In his findings on remand, Judge Card apparently relied on the mistaken assertion that the firearm and the marijuana were located in the same bedroom when he concluded that the presence of the firearm had "embolden[ed]" Murray to engage in felony marijuana possession. In fact, the marijuana was located in another part of the house. Moreover, Murray stated that he purchased the gun for his girlfriend so that she might be protected if there was a break-in. Murray's assertion was corroborated by police testimony that, even when Murray was actively looking for the gun so that he could turn it over to the officers, he looked in a bucket on the floor before locating the gun in the bedside table drawer. This evidence tends to undercut any conclusion that Murray possessed the weapon with the purpose of furthering his drug felony.
Many citizens of Alaska possess firearms to protect their homes. If the firearm in Murray's residence was purchased and used solely for home protection, then it would not have the required nexus to Murray's drug offense. In other words, the nexus is not proved simply because Murray's household possessions included drugs. To rule otherwise would be contrary to our conclusion in Collins that AS 11.61.195(a)(1) was not intended to punish a "cocaine user [who] also happens to be a gun owner."[18]
For these reasons, we vacate Judge Card's ruling and remand this case for reconsideration of the nexus issue.

Conclusion
The decision of the superior court on Murray's conviction for second-degree weapons misconduct is VACATED and the case is REMANDED for further consideration in light of this opinion. We retain jurisdiction of this case.
NOTES
[1] AS 11.61.195(a)(1).
[2] See AS 11.71.040(a)(2), AS 11.71.190(b).
[3] AS 11.71.040(a)(5).
[4] See Murray v. State, 12 P.3d 784, 787-88 (Alaska App.2000).
[5] AS 11.61.195(a)(1).
[6] See Murray, 12 P.3d at 794-95; see also Collins v. State, 977 P.2d 741, 753 (Alaska App.1999).
[7] Chilton v. State, 611 P.2d 53, 55 (Alaska 1980).
[8] See id.
[9] 977 P.2d 741 (Alaska App.1999).
[10] Id. at 748, 753.
[11] See id. at 753.
[12] See State v. Blanchard, 776 So.2d 1165, 1173 (La.2001); Commonwealth v. Montaque, 23 S.W.3d 629, 632-33 (Ky.2000).
[13] See Barnett v. State, 691 A.2d 614, 617-18 (Del.1997); Mack v. State, 312 A.2d 319, 322 (Del.1973); State v. Smith, 601 So.2d 263, 267 (Fla.Dist.Ct.App.1992); State v. Garza, 256 Neb. 752, 592 N.W.2d 485, 494 (1999).
[14] 567 A.2d 404 (Del.1989).
[15] Id. at 413-14.
[16] Id.; Del.Code Ann. tit. 11, § 1447(a).
[17] See United States v. Timmons, 283 F.3d 1246, 1253 (11th Cir.2002); United States v. Wahl, 290 F.3d 370, 376 (D.C.Cir.2002); United States v. Lomax, 293 F.3d 701, 705 (4th Cir.2002); United States v. Mackey, 265 F.3d 457, 462 (6th Cir.2001); United States v. Basham, 268 F.3d 1199, 1206-08 (10th Cir.2001); United States v. Ceballos-Torres, 218 F.3d 409, 414-415 (5th Cir.2000); see also State v. Blanchard, 776 So.2d 1165, 1173 (La.2001) (listing similar factors as relevant to a nexus determination).
[18] Collins, 977 P.2d at 748, 753.