Stephen W. NOEY, individually and d/b/a Stephen W. Noey & Associates, Ltd., a division of Pacific Rim Properties, Inc., an Alaska Corporation; and Pacific Rim Properties, Inc., an Alaskan Corporation, Petitioners,

v.

UKPEAGVIK INUPIAT CORPORATION, Respondent.

No. S–278.

Supreme Court of Alaska.

June 22, 1984.

Peter A. Galbraith, Anchorage, for petitioners.

J. Michael Robbins, Walker & Robbins, Anchorage, for respondent.

Before BURKE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

PER CURIAM.

In February, 1981 Stephen W. Noey & Associates, Ltd., et al. (hereafter Noey) and Ukpeagvik Inupiat Corporation (hereafter UIC), the Barrow Village corporation, entered into a written agreement whereby Noey would appraise certain properties owned by UIC in and around Barrow. UIC paid Noey $10,000 when the contract was signed. A dispute arose between the parties and on May 27, 1983 UIC filed suit for rescission and restitution in the superior court in Barrow claiming that Noey had not fully performed his duties under the contract. On May 31, 1983, unaware of the Barrow suit, Noey filed suit in the superior court in Anchorage claiming that it had performed all required appraisal services and that UIC owed it $13,000 under the written agreement and $3,500 for additional services performed at the request of UIC.

On June 6, 1983 Noey was served with notice of the UIC Barrow complaint. Noey responded by filing a motion to dismiss the complaint on the grounds of improper venue, or, in the alternative, to have venue transferred to the Third Judicial District at Anchorage. Noey's motion argued, *inter alia*, that it could not get a fair trial in Barrow because a large percentage of the jury pool there are UIC shareholders and therefore biased toward UIC. Judge Jeffery rejected this argument and held that the interest in having the controversy decided locally outweighed any prejudice that could result from the Barrow jurors' ownership in UIC. Judge Jeffery further stated that UIC shareholders would not be subject to a challenge for cause under Civil Rule 47(c)(12). Noey then filed a petition for review.

We hereby GRANT the petition for review of Judge Jeffery's ruling solely as to the question whether UIC shareholders would be subject to a Rule 47(c)(12) challenge for cause.

Civil Rule 47(c)(12) states:

(c) Challenges for Cause. After the examination of prospective jurors is completed and before any juror is sworn, the parties may challenge any juror for cause. A juror challenged for cause may be directed to answer every question pertinent to the inquiry. Every challenge for cause shall be determined by the court. The following are grounds for challenge for cause:

.    .    .    .    .

(12) That the person has a financial interest other than that of a taxpayer in the outcome of the case.

The superior court held that the financial interest that the shareholders of ANCSA-created village corporations presently have is so attenuated as to not be the basis of a challenge for cause when such a corporation is involved in litigation. We disagree.

"That a stockholder in a company which is a party to a lawsuit is incompetent to sit as juror is so well settled as to be black letter law." *Chestnut v. Ford Motor Company*, 445 F.2d 967, 971 (4th Cir.1971).[1] This rule extends to village and regional corporations irrespective of whether the shares are freely alienable or are earning dividends at the time of trial. Ownership of shares in a village corporation constitutes a direct financial interest in that corporation and consequently a financial interest in the outcome of the litigation to which the corporation is a party.

We thus REVERSE that portion of the superior court's ruling which held that ownership in UIC is not a ground for challenge for cause under Civil Rule 47(c)(12).

The motion to change venue is REMANDED to the superior court for redetermination in light of the views expressed herein.[2]

RABINOWITZ, J., dissents.

RABINOWITZ, Justice, dissenting.

Even if one accepts, as black-letter law, that shareholders in a corporation should not be jurors in cases in which the corporation is involved, black-letter law and Native corporations do not always fit easily together. A shareholder's "financial interest" in an ordinary corporation is indeed affected by that corporation's financial health and success in litigation. All other things being equal, a corporation which has just won a legal battle is more likely to declare a dividend than is one which has just lost. The price of a winner's shares may rise. An investor might buy into or maintain a position in a corporation in order to take advantage of its legal situation. Perceiving a significant "financial interest" in these hypotheticals might sometimes be difficult, but the black-letter rule errs on the side of certainty and exclusion.

However, Alaska Natives did not buy into the corporations Congress has established for them. They cannot sell the shares they own. Native corporation directors need not declare dividends in order to attract shareholders; the shareholders are assigned to the corporations, on the basis of residence, by an Act of Congress. Indeed, commentators have expressed some doubt about whether Native corporations should be treated as corporations, civic entities, or fiduciary institutions. *See*

---

**1.** This case is distinguishable from *Maier v. City of Ketchikan*, 403 P.2d 34 (Alaska 1965), *overruled on other grounds, Johnson v. City of Fairbanks*, 583 P.2d 181 (Alaska 1978) where the prospective jurors were rate-payers of the municipal utility. In that situation, the jurors did not effectively have a financial interest in the outcome of the case other than that of taxpayers which is an insufficient ground for challenge under Civil Rule 47(c)(12).

**2.** Judge Jeffery suggested in his order that he might grant the motion to transfer venue if shareholders in UIC were disqualified. The order states:

In this case, the interest in having "localized controversies decided at home" so that the case can be decided in the "view and reach [of local people] rather than in remote parts of the country where they could learn of it by report only" must prevail ... It may be that this balancing would be different following 1991, if shares in the village and regional corporations become freely alienable on the open market.

[Memorandum Decision and Order, pp. 4–5 (citations omitted) ] We express no view on whether the motion should be granted.

Branson, *Square Pegs in Round Holes: Alaska Native Claims Settlement Corporations Under Corporate Law*, 8 UCLA—Alaska L.Rev. 103, 125–31 (1979). For these reasons, black-letter corporate rules should be applied to Native corporations with some caution.

This is particularly true when applying the black-letter rule will damage "the local interest," which we recognized almost twenty years ago, "in having localized controversies decided at home." *See Maier v. City of Ketchikan*, 403 P.2d 34, 40 (Alaska 1965), *overruled on other grounds, Johnson v. City of Fairbanks*, 583 P.2d 181 (Alaska 1978). Thirteen years ago we held that a criminal jury should be "drawn from a fair cross section of the community," and rejected the notion that "the machinery of justice" should become "inflexibly entrenched within the enclaves of our major cities." *Alvarado v. State*, 486 P.2d 891, 897, 906 (Alaska 1971). More recently, we ruled that a civil jury trial could not be moved from Kotzebue to Anchorage simply because Kotzebue residents might be inclined to distrust people in authority. To the extent that "general community attitudes" in Kotzebue differed from attitudes in Anchorage, we stated, "such differences can better justify retaining rather than changing venue." *Wilson v. City of Kotzebue*, 627 P.2d 623, 635 (Alaska 1981). Today's decision explicitly deals with challenges for cause, not venue. It would, however, be unrealistic to assume that a jury trial in this case could be held in Barrow if most Barrow residents could be challenged for cause. If the majority's rule is accepted, most "localized controversies" concerning Native corporations will not be "decided at home"; instead, they inevitably will be decided in one of Alaska's major cities. This is precisely the result against which *Alvarado* and *Wilson* warned.

In my view, the majority's own reasoning undercuts its conclusion. Civil Rule 47(c)(12) provides that if a person "has a financial interest other than that of a taxpayer in the outcome of the case," this person can be challenged for cause. To avoid overruling *Maier v. City of Ketchikan, supra*, a case in which a litigant tried to disqualify a municipal utility's ratepayers, the majority holds that a citizen who does not "effectively" have a financial interest other than that of a taxpayer may not be challenged under Rule 47(c)(12). Meanwhile, the majority suggests that only a "direct" financial interest will trigger challenges for cause. There is, under the majority's own logic, room for a trial court to exercise a certain amount of discretion when applying Rule 47(c)(12): the court must decide if a financial interest is "direct" and, even if it is, if it is "effectively" that of a taxpayer. Thus this case should be decided under the rule established in *Malvo v. J.C. Penney Co.*, 512 P.2d 575 (Alaska 1973), which holds that "many" of the grounds on which a juror may be challenged for cause "involve value judgments on the part of the trial judge," and that value judgments of this sort are "within the sound discretion of the trial judge, with which we are most reluctant to interfere." 512 P.2d at 578. Yet the majority accords the superior court's carefully reasoned decision no deference.

I would affirm the superior court's ruling that the interests stockholders have in an ANCSA-created village corporation do not furnish a basis for a challenge for cause under Civil Rule 47(c)(12). This is a "localized controversy" which should be "decided at home."