**Geri REICH, Appellant,**

v.

**COMINCO ALASKA, INC., Appellee.**

No. S–9717.

Supreme Court of Alaska.

Oct. 4, 2002.

C.R. Kennelly, Stepovich, Kennelly & Stepovich, P.C., Anchorage, for Appellant.

Sean Halloran, Hartig, Rhodes, Hoge & Lekish, P.C., Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

Geri Reich sued her former employer, Cominco Alaska, Inc., alleging that it subjected her to a hostile work environment at the Red Dog Mine. The mine was operated by Cominco but owned by NANA Regional Corporation. Alaska Rule of Civil Procedure 47(c)(12) excludes prospective jurors who have a financial interest in the litigation. Does this rule apply to stockholders of a corporation, such as NANA, which is not a party to the lawsuit but which may be financially affected by the verdict? We conclude that it does, and hold that the superior court did not err by excluding prospective jurors who were NANA shareholders.

The timeliness of Reich's hostile work environment claim potentially depended on the continuing violations doctrine. The trial jury found for Cominco. Because Reich has not demonstrated that the instructions and special verdict form prevented the jury from finding a continuing violation, we affirm Cominco's judgment.

## II. FACTS AND PROCEEDINGS

On June 25, 1997 Geri Reich filed a lawsuit in the superior court in Kotzebue against her former employer, Cominco Alaska, Inc. The complaint asserted claims of sexual and racial discrimination,[1] hostile work environment, and unlawful termination, negligent infliction of emotional distress, and intentional infliction of emotional distress. Reich had worked as an electrician at the Red Dog Mine from 1989 until July 17, 1995; she was terminated in August 1995. Cominco operates the mine but NANA Regional Corporation owns the mine and the surrounding land. NANA was created by the Alaska Native Claims Settlement Act; almost all of its members are Inupiat Eskimos, one of the largest ethnic groups in the Kotzebue area.

Per the terms of their Development and Operating Agreement for the mine, NANA and Cominco annually share the mine's net profits. The agreement permits Cominco to subtract from gross revenues its costs of defending lawsuits against it and any judgment against it, unless the judgment is based on a jury award that finds Cominco liable for gross negligence or willful misconduct.

At Cominco's request, the superior court excluded for cause all prospective jurors who owned stock in NANA; it found that each had a direct financial interest in the outcome of the lawsuit. The court relied on Alaska Civil Rule 47(c)(12), which permits parties to challenge for cause prospective jurors who have "a financial interest, other than that of a taxpayer or permanent fund dividend recipient in the outcome of the case." The court found that any verdict other than one holding Cominco liable for gross negligence or willful misconduct would reduce NANA's share of the mine's profits; it found that even a verdict of no liability would reduce NANA's profits because Cominco could deduct its defense costs so long as there was no finding of liability for fault greater than ordinary negligence. The court therefore concluded that concern about the amount of corporate dividends NANA would pay its shareholders could influence the decision of jurors who were NANA shareholders.

Reich filed a petition for review asking us to reverse the order excluding NANA shareholders. Although we denied her petition,

---

1. Reich is an Inupiat Eskimo.

we directed the trial court to examine the prospective jurors before excluding them because Civil Rule 47(c) only permits for cause challenges "[a]fter the examination of prospective jurors is completed and before any juror is sworn."[2] We also directed the trial court to decide whether Cominco had standing to assert this challenge based on a showing of a substantial risk of prejudice.

The trial court allowed the prospective jurors to be examined, and excluded all NANA shareholders—including those who claimed they would not be influenced. The trial court also impliedly found that Cominco had standing to challenge prospective jurors who were NANA shareholders because Cominco demonstrated that, to avoid reduced dividends, those jurors would have incentive to find Cominco grossly negligent or its conduct willful. Reich appeals these rulings.

After Cominco moved for summary judgment, the superior court dismissed Reich's claims of intentional infliction of emotional distress and negligent infliction of emotional distress,[3] but allowed her wrongful discharge and hostile work environment claims to proceed. Reich argued that the continuing violations doctrine applied to her hostile work environment claim. The superior court allowed Reich to rely on the continuing violations doctrine. Her last day at the mine was July 17, 1995 and she filed her lawsuit on June 25, 1997. Reich offered evidence of incidents occurring before June 26, 1995 to support her claim that a hostile work environment continued after June 26, 1995. Question No. 5 on the special verdict form asked the jury whether "Ms. Reich was subjected to a hostile or abusive work environment at Cominco because of her race or sex after June 26, 1995." Reich objected that the quoted language was inconsistent with her hostile work environment claim. Reich claims on appeal that the quoted language in

the special verdict form effectively prevented the jury from finding liability unless Reich established that all of the elements of hostile work environment arose after June 26, 1995.

## III. DISCUSSION

### A. The Superior Court Did Not Abuse Its Discretion by Excluding NANA Shareholders.

#### 1. Standard of review

We review a trial court's interpretation of a rule of civil procedure applying our independent judgment, adopting the rule of law that is most persuasive in light of precedent, reason, and policy.[4] "It is well settled that challenges for cause under Rule 47(c) ... are within the sound discretion of the trial judge, with which we are most reluctant to interfere."[5] We will reverse a trial court's grant or denial of juror challenges for cause "only in exceptional circumstances and to prevent a miscarriage of justice."[6] We review the trial court's factual determinations, such as whether a prospective juror is a NANA shareholder, for clear error.[7]

#### 2. Civil Rule 47(c)(12)

Civil Rule 47(c)(12) permits challenges for cause of jurors who have a financial interest in the outcome of the case. Civil Rule 47(c) states:

> After the examination of prospective jurors is completed and before any juror is sworn, the parties may challenge any juror for cause.... The following are grounds for challenge for cause: ...
>
> (12) That the person has a financial interest, other than that of a taxpayer or permanent fund dividend recipient in the outcome of the case.

Does this rule permit—as the trial court held here—the exclusion of sharehold-

**2.** *Reich v. Cominco Alaska, Inc.*, Case No. S-9622, (Alaska Supreme Court Order, March 24, 2000).

**3.** Reich has not appealed the dismissal of these claims.

**4.** *Brown v. Lange*, 21 P.3d 822, 824 (Alaska 2001) (citation omitted).

**5.** *Malvo v. J.C. Penney Co.*, 512 P.2d 575, 578 (Alaska 1973).

**6.** *Mitchell v. Knight*, 394 P.2d 892, 897 (Alaska 1964).

**7.** *Mapco Express v. Faulk*, 24 P.3d 531, 535 (Alaska 2001).

ers of a corporation which is not a party to the lawsuit but which has a financial interest in the lawsuit's outcome? In *Malvo v. J.C. Penney Co.*,[8] we identified the grounds that require the trial court to determine the existence of certain relationships between jurors and parties to the litigation when a Rule 47(c) challenge is raised. We then held: "Once facts have been presented establishing such a relationship between the juror and a party, the grounds for challenge have been met. Accordingly, the failure of the trial judge to grant the challenge for those jurors who had a debtor-creditor relationship with J.C. Penney was error."[9] A trial judge does not have discretion to deny a challenge for cause once that relationship has been established.[10]

Thus, as interpreted in *Malvo*, Rule 47(c)(12) requires trial courts to presume that prospective jurors with financial relationships with a party to the litigation cannot be impartial and that their interest in the outcome will influence their decision.[11] "In these situations, the relationship between the prospective juror and a party to the lawsuit points so sharply to bias in the particular juror that even the juror's own assertions of impartiality must be discounted."[12] When the prospective juror is a stockholder in a company which is a party to the litigation, the prospective juror's impartiality is even more suspect. "That a stockholder in a company which is party to an action is incompe-

tent to sit as a juror is so well settled as to be black letter law."[13] Most courts apply a per se rule barring a shareholder from sitting on a jury "in an action to which the corporation is a party or in which it has a direct pecuniary interest."[14]

In *Noey v. Ukpeagvik Inupiat Corp.*,[15] we extended to Native corporations the rule against seating jurors who are stockholders in a company which is a party to a lawsuit. We held:

> This rule [excluding jurors who are stockholders in a company which is party to a lawsuit] extends to village and regional corporations irrespective of whether the shares are freely alienable or are earning dividends at the time of the trial. Ownership of shares in a village corporation constitutes a direct financial interest in that corporation and consequently a financial interest in the outcome of the litigation to which the corporation is a party.[16]

In *Noey*, the Ukpeagvik Inupiat Corporation (UIC) sued Stephen Noey for rescission and restitution. UIC was the Barrow village corporation and it filed its lawsuit in Barrow. Noey moved to change venue, arguing that he could not get a fair trial because a majority of the jury pool would be UIC shareholders who would be biased against him.[17] The trial court denied the motion, holding that the benefit of having the case decided locally outweighed possible prejudice against

**8.** 512 P.2d 575 (Alaska 1973).

**9.** *Id.* at 579.

**10.** We declined to decide in *Joseph v. State*, 26 P.3d 459, 464 (Alaska 2001), whether exclusion under Rule 47(c) is mandatory. The trial court there excluded prospective jurors who had been criminally prosecuted by the state. It did not examine the challenged jurors individually and instead relied exclusively on state records. We ruled that it was error to exclude the prospective jurors without examining them individually. That ruling is inapposite here because Reich's jurors were individually examined before they were excused.

**11.** *Noey v. Ukpeagvik Inupiat Corp.*, 683 P.2d 260, 261 (Alaska 1984).

**12.** *Getter v. Wal–Mart Stores, Inc.*, 66 F.3d 1119, 1122 (10th Cir.1995) (quotations and citations omitted); *see also Gladhill v. Gen. Motors Corp.*,

743 F.2d 1049, 1050 (4th Cir.1984) ("If, as is the law, the juror is legally disqualified from acting, the juror's analysis of his subjective qualifications is beside the point.").

**13.** *Chestnut v. Ford Motor Co.*, 445 F.2d 967, 971 (4th Cir.1971) (citations omitted).

**14.** *In re Asbestos Litigation*, 626 A.2d 330, 331 (Del.Super.1993) (citations omitted); *see also S. Bell Tel. & Tel. Co. v. Shepard*, 262 S.C. 217, 204 S.E.2d 11, 12 (1974) ("A stockholder in a corporation is incompetent to serve as a juror in a case in which the corporation is a party or has a pecuniary interest.").

**15.** 683 P.2d 260 (Alaska 1984).

**16.** *Id.* at 261.

**17.** *Id.* at 260.

Noey.[18] We reversed, holding that UIC stock ownership was a valid ground for challenge for cause.[19]

■ We now extend *Noey* and hold that the per se rule that excludes as jurors stockholders in a company which is a party to the litigation also applies to stockholders in a corporation which is not a party but which is nonetheless financially interested in the outcome. We must next decide if the trial court abused its discretion by finding that NANA has a financial interest in this case and excusing its shareholders for cause.

### 3. The trial court did not abuse its discretion.

### a. Cominco had standing to challenge the jurors under Rule 47(c)(12).

■ We first consider Reich's argument that Cominco did not have standing to challenge the prospective jurors because their bias did not run against it. She asserts that because the prospective jurors are shareholders in a company that does business with Cominco, their prejudice would lie against her.

Civil Rule 47(c)(12) permits a party to challenge a person with a financial interest in the lawsuit. The rule does not require both that the challenged juror have a financial relationship *and* that the relationship actually influence the juror. The rule simply requires a finding of financial interest. Reich argues that it is unlikely that the challenged jurors knew of the relationship between NANA and Cominco. She argues that it is even more unlikely that jurors who were aware of the relationship would understand its financial implications. But the record demonstrates that some prospective jurors were aware of the relationship and understood that it had an impact on NANA's profits.

For reasons we discuss below NANA, and therefore its shareholders, had a financial interest in the outcome of the lawsuit. Because Cominco would have been prejudiced by jury deliberations influenced by that financial interest, we hold that Cominco had standing to challenge the prospective jurors.

### b. The trial court did not clearly err in determining which prospective jurors were NANA shareholders.

The superior court obtained a list of the prospective jurors who were NANA shareholders and allowed Reich's attorney to voir dire them regarding bias. Each prospective juror was examined; those who were found to be NANA shareholders were dismissed. The trial court did not clearly err in deciding which prospective jurors were NANA shareholders.

### c. NANA has a direct pecuniary interest in the outcome of this lawsuit.

■ Reich argues that because NANA is not a party to the litigation, the financial interest of its shareholders is only indirect.

The superior court found that "[t]he evidence in this case demonstrates that NANA and Cominco have a joint venture agreement concerning the operation of the Red Dog Mine, and that the contractual process of division of costs and profits [creates] a potential for shareholders to compromise their verdicts in this case."

■ A company's direct financial interest in the outcome of litigation is imputed to its shareholders.[20] NANA and Cominco have an operating agreement specifying their financial relationship. In determining whether NANA had a financial interest in Reich's lawsuit, the superior court relied on the affidavit and testimony of Shelby Stastny, NANA's Chief Financial Officer. Stastny explained the Development and Operating Agreement between NANA and Cominco. Stastny asserted that any damages awarded against Cominco "will affect Cominco's oper-

---

**18.** *Id.*

**19.** *Id.* at 261.

**20.** We have held that this is no less true for Native corporations "irrespective of whether the shares are freely alienable or are earning dividends at the time of trial." *Noey,* 683 P.2d at 261.

ating costs and, in turn, the net profits for the Red Dog Project. Accordingly, NANA has a direct pecuniary interest in the outcome of the ... litigation." NANA receives a net smelter royalty for the minerals extracted from the Red Dog Mine. After Cominco recovers operating costs relating to the mine, NANA receives a portion of each year's net profits. The percentage of the net profits that NANA receives increases annually. NANA will ultimately receive fifty percent of the annual net profits.

Cominco may subtract operating costs from gross profits before it calculates NANA's revenue. Legal expenses associated with the mine are included in those deductible operating costs so long as a jury does not find Cominco liable for gross negligence or willful misconduct. Cominco may therefore subtract any costs of defending a lawsuit in which a jury finds that Cominco was not at fault or was simply negligent. Cominco may also deduct a judgment if it is based on fault less serious than gross negligence. These deductions decrease NANA's net profits. A verdict of no liability will reduce NANA's profits, as will a verdict of liability based on simple negligence. The agreement between Cominco and NANA therefore potentially gives NANA shareholders an incentive to find Cominco liable for gross negligence or willful misconduct. Finding otherwise will reduce NANA's profits and could affect its dividends.

The superior court concluded that "NANA is financially tied to Cominco and the operation of the Red Dog Mine," and that NANA "has a pecuniary interest in the outcome of this litigation." The superior court ruled that this financial interest justified the challenge for cause of NANA's shareholders.

Reich relies on *Harmotta v. Bender*.[21] The challenged jurors were members of the Roman Catholic Church and were to hear a case involving a Roman Catholic parish in the same diocese.[22] They were challenged because they were "members of the Diocese fund church activities, and could be called upon to reimburse the church" if the appellants recovered a judgment against the church.[23] The trial court ruled that they were not subject to challenge because their interest was too remote; the appellate court held that this ruling was not an abuse of discretion.[24]

To some extent, Harmotta simply reflects the deference given to a trial court when it decides whether to exclude challenged jurors in circumstances permitting an exercise of discretion. But here, once the trial court found that NANA had a "pecuniary interest in the outcome of this litigation," the per se rule of exclusion applied to NANA shareholders, and the trial court no longer had discretion to permit NANA shareholders to sit as jurors. In Harmotta there was only a possibility church members would be called on to reimburse the church. In this case, Reich's lawsuit would reduce NANA's profits unless the jury found willful misconduct or gross negligence. Jurors who are NANA stockholders therefore had incentive to find Cominco liable for either willful conduct or gross negligence, and had incentive not to find it free of fault.

Other reported decisions preclude stockholders from sitting on juries in cases in which their company might have any financial interest at all, regardless of the amount of interest or whether the prospective juror claims impartiality.[25]

The stockholders' financial interest in Reich's case was closer to the prospective jurors' interest in *Noey* than the attenuated interest in *Harmotta*. The interest here is even clearer than that of a prospective juror who owns shares of a non-defendant insurance company with a financial stake in the outcome of the litigation.[26] "Some courts have gone so far as to disqualify ... relatives

21. 411 Pa.Super. 371, 601 A.2d 837 (1992).

22. *Id.* at 838.

23. *Id.* at 840–41.

24. *Id.* at 841.

25. *Noey*, 683 P.2d at 261; *see also Dunipace v. Martin*, 73 Ariz. 415, 242 P.2d 543, 545 (1925); *Page v. Contoocook Valley R.R.*, 21 N.H. 438, 438 (N.H.1850); *S. Bell Tel.*, 204 S.E.2d at 11.

26. *Gonzalez v. Wells*, 213 Ga.App. 494, 445 S.E.2d 332, 333 (1994).

within the prohibited degree of relationship to a stockholder in a cause where the corporation is a party or has pecuniary interest."[27]

The trial court conducted voir dire in compliance with Rule 47(c) before dismissing the NANA shareholders for cause. The superior court accepted Stastny's explanation and ruled that the prospective jurors' incentive to protect their dividends justified their exclusion. We hold that the superior court did not err by dismissing NANA shareholders for cause.

### B. The Special Verdict Form Did Not Prevent the Jury from Finding that a Hostile Work Environment Existed Within the Two Years Before Reich Filed Suit.

■■■ Reich argues that the court prevented the jury from taking the continuing violations doctrine into account when it decided her hostile work environment claim against her.[28] The crux of Reich's argument is her contention that the hostile work environment instruction, the special verdict form, and the court's response to a jury question "essentially told the jury" that it could not find liability if the employer was given notice of a hostile work environment prior to the two-year limitations period before Reich filed suit. She argues that the court erroneously required her to prove that she gave "additional notice" to Cominco within the limitations period, depriving her of the benefit of the continuing violations doctrine.

■■■ We review de novo jury instructions to which timely objection was made.[29] "A special verdict form is a type of jury instruction subject to the same standard of review for jury instructions."[30] "A jury instruction containing an erroneous statement of law constitutes reversible error if it prejudice[s] one of the parties; prejudice exists 'if it can be said that the verdict may have been different had the erroneous instruction not been given.' "[31] "In evaluating whether there has been prejudicial error with regard to jury instructions, 'the reviewing court must put itself in the position of the jurors and determine whether the error probably affected their judgment.' We review this question de novo."[32]

■■■ Reich filed suit on June 25, 1997. Alaska Statute 09.10.070, the two-year statute of limitations, determines the timeliness of her hostile work environment claim.[33] All elements of that claim must have occurred within the two years before she sued, unless she proved a "continuing violation."[34] The

---

**27.** *Salina v. Commonwealth of Virginia*, 217 Va. 92, 225 S.E.2d 199, 200 (1976) (citation omitted); *see also Shipman v. Johnson*, 89 Ga.App. 620, 80 S.E.2d 717, 721 (1954) (disqualifying prospective jurors who held stock in litigant's husband's insurer).

**28.** We have held that "[c]onduct which unreasonably interferes with work performance ... creates an abusive working environment." *French v. Jadon, Inc.*, 911 P.2d 20, 28 (Alaska 1996) (quoting *Ellison v. Brady*, 924 F.2d 872, 877 (9th Cir.1991) (internal quotation marks omitted)). A corporation is vicariously liable for its employees' conduct if "[o]ne or more of [its] supervisory employees encouraged, caused, permitted, ratified, or participated in the conduct; or ... knowing of the conduct, excused it or failed to take remedial action reasonably calculated to end the harassment." *Veco, Inc. v. Rosebrock*, 970 P.2d 906, 912 (Alaska 1999).

**29.** *Glamann v. Kirk*, 29 P.3d 255, 259 (Alaska 2001).

**30.** *Id.*

**31.** *Barrett v. Era Aviation, Inc.*, 996 P.2d 101, 103 (Alaska 2000) (quoting *Beck v. State, Dep't of*

*Transp. & Pub. Facilities*, 837 P.2d 105, 114 (Alaska 1992)).

**32.** *Cable v. Shefchik*, 985 P.2d 474, 479 (Alaska 1999) (quoting *Harris v. Keys*, 948 P.2d 460, 465–66 (Alaska 1997)).

**33.** AS 09.10.070 provides in part: "A person may not bring an action ... for any injury to the person ... not arising on contract and not specifically provided otherwise; ... upon a liability created by statute ... unless the action is commenced within two years."

**34.** The court instructed the jury that it had to find these four elements to find a hostile work environment:

(1) [T]he Plaintiff was subject to racially or sexually offensive acts or statements; (2) such acts or statements were unwelcome and had not been invited or solicited, directly or indirectly, by the Plaintiff's own acts or statements; (3) such acts or statements resulted in a work environment that was so severe or pervasive that it altered the conditions of the Plaintiff's employment; (4) a reasonable person would

continuing violations doctrine allows plaintiffs to establish an ongoing tort through incidents that occurred before the statute of limitations period and that continued into the limitations period.[35] The continuing violations doctrine allows a plaintiff to establish the elements of a hostile work environment claim by relying on incidents that predate the statutory limitations period to prove that a hostile environment continued into the limitations period.[36]

The trial court agreed to apply the continuing violations doctrine to this case.[37] The doctrine's application was potentially critical to Reich's hostile work environment claim because there was a factual dispute whether Cominco was given notice of a hostile work environment within the two years before Reich filed suit, and whether Cominco failed to remedy the alleged condition. There was evidence that Cominco supervisors had been put on notice before June 26, 1995 of a possible hostile work environment.

The special verdict form submitted these questions to the jury:

Do you find from a preponderance of the evidence:

1. That Ms. Reich complained to Cominco management about being harassed or discriminated against in her employment?

2. That complaints made to Cominco management by Ms. Reich were a causal factor in Cominco's decision to discharge Ms. Reich?

. . . .

5. That Ms. Reich was subjected to a hostile or abusive work environment at Cominco because of her race or sex after June 26, 1995?

6. That such hostile or abusive work environment was created by a supervisor with immediate or successively higher authority over Ms. Reich, or that such a supervisor knew of such conduct and failed to take remedial action calculated to end the harassment?

The jury answered "yes" to Question No. 1, and "no" to Questions No. 2, 5, and 6. It did so after the court, responding to a question from the jury, informed the jury over Reich's objection that the June 26, 1995 "time frame" also applied to Question No. 6.

■■ We discern no error. The instructions, the verdict form, and the court's answer to the jury's question did not prevent the jury from giving effect to the continuing violations doctrine or considering Reich's claim as she presented it. The special verdict form appropriately required the jury to determine whether Reich was subjected to a hostile work environment after June 26, 1995. It did not prevent the jury from considering events occurring or information conveyed before June 26, 1995 in deciding whether a hostile work environment existed after that date. It did not prevent the jury from relying on evidence that the employer had been put on notice before that date that a hostile work environment existed. Cominco did not claim that notice previously given was no longer effective after June 26. Nor

have found the workplace to be hostile or abusive.

Reich did not object to this instruction and no party argues that it was error to give this instruction.

**35.** See, e.g., Morgan v. Nat'l R.R. Passenger Corp., 232 F.3d 1008, 1014–15 (9th Cir.2000); Sengupta v. Univ. of Alaska, 21 P.3d 1240, 1249 (Alaska 2001) (citations omitted); but cf. Hall v. Bodine Elec. Co., 276 F.3d 345, 353 (7th Cir.2002) (holding that plaintiff may not base suit on conduct occurring outside statute of limitations unless reasonable to expect plaintiff to sue before statute ran on conduct, as where conduct could constitute or be recognized as actionable harassment only in light of events occurring later, within statute of limitations period).

**36.** Richards v. CH2M Hill, Inc., 26 Cal.4th 798, 111 Cal.Rptr.2d 87, 29 P.3d 175, 183 (2001); Cuddyer v. Stop & Shop Supermarket Co., 434 Mass. 521, 750 N.E.2d 928, 936–37 (2001); Hall v. Saint Joseph's Hosp., 343 N.J.Super. 88, 777 A.2d 1002, 1009–1010 (2001); Wal–Mart Stores, Inc. v. Davis, 979 S.W.2d 30, 41 (Tex.App.1998).

**37.** The superior court cited Oaksmith v. Brusich, 774 P.2d 191, 200 n. 10 (Alaska 1989), in support of this ruling. See also Sengupta, 21 P.3d at 1249 (recognizing continuing violations theory under which "certain patterns of discriminatory acts against the same employee can preserve a claim as timely that might otherwise be barred by the statute of limitations"). Cominco argues that Reich is not entitled to invoke the continuing violations doctrine. We do not need to consider this alternative ground for affirming.

did it claim that it had no duty to remedy a hostile work environment if it was put on notice of that condition before June 26. The jury was not prevented from finding that knowledge gained before June 26 continued after June 26, or that inaction predating June 26 continued after that date.

It is hard to imagine how the Question No. 6 "time frame" dispute could have affected the outcome. The jury answered "no" to Question No. 5, which asked if the jury found "That Ms. Reich was subjected to a hostile or abusive work environment at Cominco because of her race or sex after June 26, 1995." That question did not prevent Reich from relying on pre-June 26 events to prove that she was subjected to a hostile work environment after June 26. But given the jury's answers to Question No. 2 (finding that Reich's complaints to Cominco management were not a causal factor in its decision to discharge her) and Question No. 5, it is difficult to see how the jury could have answered "yes" to Question No. 6 even if the court had not told the jury to apply the June 26 "time frame" when answering Question No. 6.

As Cominco argues, it is irrelevant how the jury interpreted the special verdict form questions because the negative answer to Question No. 5 means that the jury found "that there was no hostile environment at any time after June 26, 1995." Cominco asserts that this finding necessarily means that no preexisting hostile environment continued beyond June 26, 1995, and that no new "improper conduct" created a hostile environment after that date. Cominco thus reasons that "it would have been irrelevant to . . . ask the jury to determine whether a supervisor had knowledge of any inappropriate conduct that may have occurred prior to June 26,

1995," because "the jury found . . . no improper conduct occurring after that time" and because the jury also "found that [a hostile environment] did not exist afterward." We agree with these propositions.

Furthermore, Reich contended in final argument to the jury that Cominco exposed her to continuous harassment that began soon after she was hired and that culminated in her termination. In light of this approach and the jury's answer to Question No. 5, it is highly improbable that the continuing violation doctrine had any relevance to Reich's case.[38]

We therefore conclude that the trial court did not err in rejecting Reich's objection to answering the jury's inquiry, and that no error in submitting the continuing violations doctrine to the jury prejudiced Reich's hostile work environment claim.[39]

## IV. CONCLUSION

Because the superior court correctly applied the per se rule allowing challenges for cause of prospective jurors with a financial interest in the litigation, we AFFIRM the superior court's exclusion of jurors who owned stock in NANA.

Because the special verdict form and the instructions did not erroneously prevent the jury from giving effect to the continuing violations theory of tort liability, we AFFIRM the judgment for Cominco.

---

**38.** *See Grimes v. Haslett,* 641 P.2d 813, 818 (Alaska 1982) ("An erroneous statement of the law in a jury instruction will not constitute reversible error unless it prejudiced one of the parties.") (citing *City of Nome v. Ailak,* 570 P.2d 162, 172 (Alaska 1977)).

**39.** Reich also asserts that the trial court required her "to give additional notice" to Cominco within the limitations period, and that "the trial court told the jury that Reich was required to give notice within the statutory limitations period and that notice of the violations prior to that date were [sic] irrelevant." These assertions do not correctly describe what the trial court told the jury.