**Timothy G. ALEX, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–8839.

Court of Appeals of Alaska.

Jan. 13, 2006.

Rehearing Denied Feb. 16, 2006.

---

10. *Kellis v. Crites,* 20 P.3d 1112, 1114–15 (Alaska 2001); *Edwards v. State,* 34 P.3d 962, 969–970 (Alaska App.2001).

Carmen E. Clark, Law Offices of Pamela Dale, for the Appellant.

John A. Scukanec, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Timothy G. Alex was convicted of weapons offenses after the police recovered a pistol from under the passenger seat of the vehicle in which Alex was riding. At trial, Alex claimed that he had no idea that the pistol was there.

Toward the close of the trial, Alex's trial judge proposed to instruct the jury that a person is in "constructive possession" of an item if the person has "the power to exercise dominion or control" over that item. Alex's defense attorney argued that proof of a person's *power* to exert dominion or control over an object was not enough—that the State was also obliged to prove that the person actually exercised this power, or at least intended to exercise it. After listening to the defense attorney's argument, the trial judge decided not to alter the wording of the jury instruction. In this appeal, Alex renews his contention that the instruction, as given, was an erroneous statement of the law.

It is not clear that this case even raises an issue of constructive possession. As we explain in more detail below, the item in question—a semi-automatic assault pistol—was found underneath the passenger seat of the vehicle in which Alex was riding (as the passenger). It would therefore appear that, if Alex indeed possessed this pistol, he had actual possession of it, not "constructive" possession.

The fact that the parties to this appeal have framed the issue in terms of "constructive possession" may stem from the fact that this concept suffers from a lack of precision. As the United States Supreme Court has noted, the two concepts of "actual" possession and "constructive" possession "often so shade into one another that it is difficult to say where one ends and the other begins".[1] Indeed, some legal commentators have suggested that the words employed in Alex's case to define constructive possession—"dominion" and "control"—do not really provide a workable definition of this concept; rather, these words "are nothing more than labels used by courts to characterize given sets of facts".[2]

There is, in fact, some case law to support Alex's contention that a person should not be convicted of constructively possessing an object merely because the person *could* have exercised dominion or control over the object—that the government must also prove either that the person *did* exercise dominion or control over the object, or at least *intended* to do so.

However, because of the way Alex's case was litigated, we are convinced that the jury's decision did not turn on this distinction. As we explain here, the jury's verdicts demonstrate that the jurors must have concluded, not only that Alex knew about the pistol under his seat, but also that Alex possessed that pistol for the purpose of fur-

1. *National Safe Deposit Co. v. Stead*, 232 U.S. 58, 67, 34 S.Ct. 209, 212, 58 L.Ed. 504 (1914), quoted in Wayne R. LaFave, *Substantive Criminal Law* (2nd ed.2003), § 6.1(e) ("crimes of possession"), Vol. 1, p. 433.

2. Charles H. Whitebread and Ronald Stevens, "Constructive Possession in Narcotics Cases: To Have and Have Not", 58 Va.L.Rev. 751, 759–760 (1972), quoted in Wayne R. LaFave, *Substantive Criminal Law* (2nd ed.2003), § 6.1(e), Vol. 1, p. 432.

thering a felony drug offense. Thus, even assuming that the jury instruction on "constructive possession" should have expressly required proof that Alex had already exercised dominion or control over the pistol, or that he intended to do so, this error had no effect on the jury's decision. We accordingly affirm Alex's conviction.

*Underlying facts*

On the afternoon of December 14, 2002, Anchorage Police Officer Leonard Torres made a traffic stop of a vehicle. When Torres asked to see the vehicle registration, the driver, Darryl Wilson, told the passenger, Timothy Alex, to retrieve the registration from the glove compartment. Torres moved to the passenger side of the vehicle so that he could "see ... what [Alex] was reaching for in the glove compartment". When he did so, Torres observed that Alex had an open bottle of beer between his legs.

Wilson, too, had apparently been drinking. Moreover, when Torres ran Wilson's and Alex's names through the computer, he learned that both men were on felony probation. Torres called for backup.

Torres focused his attention on Wilson while two backup officers, Kevin Armstrong and Jeff Carson, asked Alex to step outside the vehicle. During their conversation with Alex, one of the officers asked if there were any firearms in the vehicle. Alex told the officers that there was a firearm under the passenger seat. Carson looked on the floor of the vehicle, underneath where Alex had been sitting, and discovered a "Tec 9" (*i.e.,* an Intratec DC–9, a 9–mm semi-automatic assault pistol).

Because Alex was a convicted felon, he was prohibited from possessing a concealable firearm. *See* AS 11.61.200(a)(1). Alex was arrested for this offense. Later, during Alex's appearance in front of the committing magistrate, a bag of cocaine fell from his clothes.

Based on these events, Alex was indicted for third-degree controlled substance misconduct (possession of cocaine with intent to distribute);[3] as well as two other charges that hinged on his possession of the Tec–9 pistol: second-degree weapons misconduct (possession of a firearm in furtherance of a felony drug offense), and third-degree weapons misconduct (possession of a concealable firearm by a felon).[4]

Alex did not testify at his trial. However, Alex's attorney elicited testimony (during cross-examination of the police officers) that (1) both Wilson and Alex told the police that the Tec–9 pistol belonged to the owner of the vehicle, a man named Earl Smith, and that (2) when the police spoke to Earl Smith about this weapon, he confirmed that the Tec–9 pistol did, in fact, belong to him. Indeed, Smith declared that he had never told Wilson and Alex that there was a pistol in the vehicle.

(This testimony was undercut somewhat by the testimony of Officer Carson, who stated that, following Alex's arrest, Earl Smith had come to the scene of the traffic stop at about the time that the police were loading the vehicle onto a tow truck, preparatory to its impoundment. According to Carson, Smith asked if he could retrieve his property from the vehicle before it was towed away. After checking with his superiors, Carson gave Smith permission to retrieve his property. Smith then removed some snow machine gear from the vehicle. Neither Carson nor Smith mentioned the Tec–9 pistol during their conversation. However, when Carson asked Smith if the snow machine gear was all of his property from the vehicle, Smith answered yes.)

At the end of the trial, during the defense summation, Alex's attorney told the jury that Smith's account was truthful: that the pistol belonged to Smith, and that Alex had not known that the pistol was in the vehicle.

The defense attorney acknowledged that two police officers (Armstrong and Carson) had testified that Alex *did* know about the pistol—that, in fact, Alex told them that the weapon was present in the vehicle, and that he disclosed the weapon's location under the

---

**3.** AS 11.71.030(a)(1).

**4.** AS 11.61.195(a)(1) and AS 11.61.200(a)(1), respectively.

passenger seat. But the defense attorney told the jurors that the officers were lying—that the officers were saying this only because they knew that the State's "whole case" depended on the argument that Alex must have knowingly possessed the weapon "because he knew it was there".

The defense attorney repeatedly declared that the jurors should disbelieve the officers' testimony on this point. She told the jurors: "Look at the foundation of [Alex's] alleged confession [that there was gun underneath the seat]. Look at the root of that information. It's tainted; it's skewed; it's biased; it's untrustworthy." A few moments later, she told the jurors: "We have the shadiest confession, completely untrustworthy."

A little later in her summation, the defense attorney returned to this theme. She told the jurors that, because Alex was merely a passenger in the car (not the owner of the vehicle, and not the driver), the police must have known that they could not charge and convict Alex of the weapons offenses unless they had a confession—*i.e.*, Alex's admission that he knew that the pistol was under his seat.

> *Defense Attorney:* So they [purportedly] get [the needed confession]. [But] did they? I don't know. Do you know? I would think not.
>
> . . .
>
> [The police] call[ed] Mr. Earl Smith [to ask him about the gun]. And ... what did Mr. Earl Smith say? "That's my gun. [Wilson and Alex] don't know that it's in there."

These arguments proved unavailing; the jury convicted Alex of the two weapons offenses (and the drug offense as well).

### The discussion of the jury instruction regarding possession

At the close of the evidence (that is, after both the prosecution and the defense had rested their cases), the parties and the trial judge, Superior Court Judge Larry D. Card, met outside the presence of the jury to discuss jury instructions.

All three of the crimes charged against Alex—possession of cocaine with intent to distribute, possession of a firearm in furtherance of a felony drug offense, and possession of a concealable firearm by a felon—all required proof that Alex had possessed a particular object or substance. Thus, Judge Card's packet of proposed instructions contained an instruction defining the term "possess". Here are the four pertinent paragraphs of that instruction:

> "Possess" means having physical possession or the exercise of dominion or control over property.
>
> The law recognizes two kinds of possession: actual possession and constructive possession. Actual possession means to have direct physical control, care, and management of a thing.
>
> A person not in actual possession may have constructive possession of a thing. Constructive possession means to have the power to exercise dominion or control over a thing. This may be done either directly or through another person or persons.
>
> The law recognizes also that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint.

Alex's attorney objected to the third paragraph of the instruction. Specifically, the defense attorney asked Judge Card to strike the words "have the power to" from the second sentence of that paragraph, so that it would read: "Constructive possession means to exercise dominion or control over a thing." Alex's attorney repeatedly asserted that the presence of the phrase "have the power to" made a significant alteration to the meaning of constructive possession. However, the defense attorney never actually explained what this alteration was, or why the altered definition made any difference to the resolution of Alex's case. Judge Card decided to leave the wording unchanged.

### The potential problem with the definition of "constructive possession", and why we conclude that any error was harmless

In retrospect (and after briefing), it is easier to see the potential problem caused by

including the words "have the power to" in the definition of "constructive possession". This problem is illustrated by the facts of *State v. Harvey,* 463 So.2d 706 (La.App. 1985). In *Harvey,* a woman was convicted of illegally possessing drugs after the drugs were found in her mother's house, where she was living. The Louisiana court noted that there was sufficient evidence to infer that Harvey knew of the presence of the drugs in the house, and knew that drug-dealing was taking place in the house, but the court nevertheless concluded that there was insufficient evidence that Harvey personally exercised any dominion and control over the drugs. *Id.* at 708.

In other words, because Harvey lived in the house, and because the drugs were in locations that were accessible to her (the bedroom and the kitchen), Harvey may have had the physical power to exert control over the drugs if she had wished. But there was no evidence that she participated in the drug-dealing activities or that she had anything else to do with the drugs. Thus, the court concluded, the evidence was not sufficient to establish her possession of the drugs for purposes of the criminal law.

Alaska cases have never directly addressed this point. In *State v. Niedermeyer,* 14 P.3d 264, 272 (Alaska 2000), the Alaska Supreme Court declared that "possession" was "a common term with a generally accepted meaning: having or holding property in one's power; the exercise of dominion over property." But the supreme court may have been overly optimistic when it declared that "possession" had a common, generally accepted meaning.

There is an ambiguity in the word "power". This word can refer to a person's right or authority to exert control, but it can also refer to anything a person might be physically capable of doing if not impeded by countervailing force. Thus, if "constructive possession" is defined as the "power" to exercise dominion or control over an object, this definition potentially poses problems—because it suggests that a person could be convicted of possessing contraband merely because the person knew of the contraband and had physical access to it, even though the person

had no intention or right to exercise control over it.

For example, the children of a household might know that there is beer in the refrigerator or liquor in the cupboard. Assuming that it is within the children's physical power to gain access to these alcoholic beverages, one might argue that the children are in "constructive possession" of these beverages—and thus guilty of a crime under AS 04.16.050 (minor in possession of alcoholic beverages)—because the children have "the power to exercise dominion or control" over the beverages.

To avoid results like this, some courts have worded their definitions of "constructive possession" in terms of a person's "authority" or "right" to exert control over the item in question. See, for example, *State v. Henderson,* 696 N.W.2d 5, 9 (Iowa 2005). Other courts have worded the test as the defendant's "power *and intention*" to exert control or dominion over the object. See, for example, *United States v. Cousins,* 427 F.2d 382, 384 (9th Cir.1970) (emphasis added).

This same type of problem might have arisen in Alex's case if the case had been litigated differently. For example, given the facts of the case, one can imagine Alex conceding that he was aware of the pistol under his seat, but then asserting that he had no connection to the pistol and that he only became aware of its presence underneath his seat when, during his ride in the vehicle, the pistol bumped against his feet.

But this was not the strategy that Alex's defense attorney adopted at trial. Instead of conceding that Alex knew that there was a pistol under his seat, Alex's attorney denied that Alex knew about the pistol, and further denied that Alex had ever said anything to the police about the weapon. The defense attorney relied on Earl Smith's statement that Alex and Wilson did not know that there was a firearm in the vehicle, and the attorney argued that the police officers had lied when they testified that Alex directed them to the weapon.

On this point, it is important to note that the discussion about the wording of the jury instruction occurred *after* the defense attor-

ney had presented her case. Assumedly, the defense attorney had already formulated her summation to the jury. If she had been considering a defense such as the one described two paragraphs above, one would expect her to have highlighted this defense when she discussed the wording of the jury instruction with Judge Card, and to have explained how the disputed language might lead the jury to improperly reject this proposed defense.

But the defense attorney's arguments to Judge Card were phrased in the abstract. Judge Card was never alerted that the wording of the jury instruction might pose a real-life problem in Alex's case. The defense attorney never told Judge Card that the wording of the instruction might either support or doom Alex's chosen defense.

■ From this, it appears that Alex's attorney had already decided to argue that Alex did not even knew about the pistol under his seat. Given this defense, it is unlikely that the claimed ambiguity or error in the jury instruction defining "constructive possession" affected the jury's decision—because the alleged flaw in the jury instruction would make a difference only if Alex conceded that he was aware of the assault pistol under his seat.

■ Even when a jury instruction contains an erroneous statement of law, the flawed instruction will require reversal of a conviction only if "it can be said that the verdict may have been different had the erroneous instruction not been given".[5] Here, given the way that Alex litigated this case, there is no reason to believe that the verdict would have been different even if the jury instruction had been modified in the manner that Alex's defense attorney proposed.

There is, moreover, a second reason for concluding that any error in the "constructive possession" instruction could not have affected the jury's decision: the jury convicted Alex of second-degree weapons misconduct.

Alex was charged with second-degree weapons misconduct under the theory that he possessed a firearm in furtherance of a drug felony. As we explained in *Collins v. State*, 977 P.2d 741, 753 (Alaska App.1999), this crime "requires proof of a nexus between a defendant's possession of the firearm and the defendant's commission of the felony drug offense". We elaborated this point in *Murray v. State*, 54 P.3d 821, 824 (Alaska App.2002):

> [T]o establish the [required] nexus . . ., the State must prove that the defendant's possession of the firearm aided, advanced, or furthered the commission of the drug offense. Possession of drugs and a firearm alone is insufficient for such a finding— even if the drugs and firearm were located in close physical proximity.

Alex's jury was instructed in accordance with *Collins* and *Murray*. The jury was told that, before they could convict Alex of second-degree weapons misconduct, the State had to prove that Alex's possession of the firearm "aided, advanced[,] or furthered the drug offense".

Thus, when the jury found Alex guilty of this weapons offense, the jurors necessarily found that Alex did more than simply possess the assault pistol at the same time and place that he was committing the drug offense (possession of cocaine with intent to distribute). Alex was not simply a passenger in a vehicle who discovered, to his surprise, that he had physical access to a pistol under his seat. Rather, the jurors found that Alex knowingly possessed the pistol in aid or in furtherance of his drug offense.

For this reason, too, we conclude that the jury's verdict was not influenced by any arguable error in the jury instruction defining "constructive possession".

### Conclusion

As we have explained here, Alex's brief to this Court identifies a potential problem in the wording of the "constructive possession" instruction that was given at his trial. We doubt that the trial judge was adequately alerted to this problem. But in any event,

5. *See Reich v. Cominco Alaska, Inc.*, 56 P.3d 18, 25 (Alaska 2002), quoting *Beck v. Dept. of Trans-* *portation & Public Facilities*, 837 P.2d 105, 114 (Alaska 1992).

we conclude that this potential problem in the wording of the jury instruction had no effect on the jury's verdicts. Accordingly, the judgement of the superior court is AFFIRMED.