NOTICE

*The text of this opinion can be corrected before the opinion is published in the*
*Pacific Reporter. Readers are encouraged to bring typographical or other formal*
*errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

DAVID P. DIRKS,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-11534
Trial Court No. 3KN-12-1034 CR

O P I N I O N

No. 2531 — January 6, 2017

Appeal from the District Court, Third Judicial District, Kenai, Matthew Christian, Magistrate Judge.

Appearances: David T. McGee, Anchorage, under contract with the Public Defender Agency, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Donald Soderstrom, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, and Allard, Judge.

Judge MANNHEIMER.

David P. Dirks was convicted of fourth-degree weapons misconduct for possessing a holstered handgun in the backseat of his car while he was impaired by alcohol. See AS 11.61.210(a)(1), which forbids possessing a firearm "on [one's] person, or in the interior of a vehicle in which [one] is present, ... when [one's] physical or

mental condition is impaired as a result of … intoxicating liquor or a controlled substance".

The issue in this case arises because the holstered handgun did not belong to Dirks. Rather, it belonged to Dirks's friend, Matthew Pemberton, who was riding as a passenger in Dirks's car.

The State's theory of prosecution was that, even though the gun belonged to Pemberton, Dirks "possessed" this weapon — and thus violated the statute — because Dirks knew that the gun was "in the interior of a vehicle in which [he was] present".

For the reasons explained in this opinion, we conclude that Dirks's knowledge that the gun was present in the interior of his vehicle, and the fact that the weapon was physically within his reach, are not legally sufficient (standing alone) to establish that Dirks "possessed" the weapon. We therefore reverse Dirks's conviction.

*The pertinent procedural history of this case*

At the close of Dirks's trial, the trial judge gave the jurors an instruction on the meaning of "possess". This instruction presented the jurors with a jumble of legal concepts, many of which had no application to Dirks's case:

> "Possess" means having physical possession or the exercise of dominion or control over property.

> The law recognizes two kinds of possession: actual and constructive possession. Actual possession means to have direct physical control, care and management of a thing. A person not in actual possession may have constructive possession of a thing. Constructive possession means to have the right, authority or intention to exercise dominion over the control of a thing. This may be done either directly or indirectly or through another person or persons. The law

recognizes also that possession may be sole or joint. If the person alone has actual or constructive possession of a thing, possession is sole. [If] two or more persons share actual or constructive possession of a thing, possession is joint. You may find the element of possession as that term is used in these instructions is present if you find beyond a reasonable doubt that the defendant had actual or constructive, either alone or jointly with others.

This instruction could easily have been confusing to the jurors. For instance, even though the instruction makes a great point of distinguishing between "actual" and "constructive" possession, there was no evidence of constructive possession in Dirks's case.

"Constructive possession" refers to a person's authority to exercise dominion or control over property even though it is not in their immediate physical possession. Thus, a person continues to "possess" their household belongings even though the person is physically away from home.

(The law uses the adjective "constructive" to refer to a situation where an action or a state of affairs does not actually fit within the normal definition of some relevant concept, but the action or state of affairs will nevertheless be treated as the legal equivalent. *Black's Law Dictionary* gives the following example of the usage of "constructive": "[T]he court held that the shift supervisor had constructive knowledge of the machine's failure even though he did not actually know until two days later[.]" [1])

In Dirks's case, the prosecutor never argued a theory of constructive possession. That is, the prosecutor did not argue that Dirks was authorized to exercise dominion or control over a handgun that was located elsewhere. Rather, the prosecutor argued that Dirks "possessed" Pemberton's handgun because the holstered weapon was

---

[1]   Bryan A. Garner (editor in chief), *Black's Law Dictionary* (8th ed. 2004), p. 333.

in Dirks's vehicle, lying on the back seat, and Dirks knew that it was there. Thus, if Dirks "possessed" this handgun, his possession was an immediate "physical" possession — not a "constructive" possession of a weapon located somewhere else. See our discussion of this point in *Alex v. State*, 127 P.3d 847, 848, 850-52 (Alaska App. 2006).

The jury instruction also spoke about how two or more people can jointly possess property, and how a person can possess property through an agent, and how a person can possess property "indirectly". But there was no evidence to suggest that any of these concepts applied to Dirks's case.

In particular, there was no evidence to suggest that Pemberton was not the sole owner of the gun, or that Pemberton owned the gun but possessed it as Dirks's agent, or that Dirks possessed the weapon "indirectly" in some other manner. The only relevant evidence on these matters was Pemberton's testimony that Dirks did *not* use this gun — although Pemberton acknowledged that he would have been willing to let Dirks shoot the gun if Dirks had asked (as long as "[they] were somewhere [where it was] safe to shoot").

But given the hodgepodge of legal theories embedded in this jury instruction, the prosecutor was able to argue that Dirks "possessed" the handgun, even though the gun belonged to Pemberton, simply because Dirks knew that the gun was in his car and within his reach. This theory of prosecution was improper.

*Why we reverse Dirks's conviction*

The legal concept of "possession" does not include all items of property that are within a person's reach or in a person's presence. Shoppers walking down the aisle of a store do not "possess" all of the merchandise lying before them on the shelves, nor do museum visitors "possess" all of the artwork that they pass within reach of.

– 4 –                                                                 2531

In *State v. Niedermeyer*, 14 P.3d 264, 272 (Alaska 2000), the Alaska Supreme Court declared that "possession" was generally understood to mean "having or holding property in one's power; the exercise of dominion over property." But as the facts of *Alex* demonstrated, and as the facts of Dirks's case again demonstrate, the supreme court's formulation presents certain difficulties.

As we explained in *Alex*, the word "power" is ambiguous. It can refer to a person's right or authority to exert control over people or property, but it can also refer to anything a person might be physically capable of doing if not impeded by countervailing force.

Thus, if "possession" of property were defined as simply the "power" to exercise control over an object, this would suggest that a person could be found guilty of "possessing" an item of property that they did not own, and that they had no intention of using or even touching, merely because the person knew where the property was located and the person had immediate physical access to it.

This, in fact, was the State's theory of prosecution in Dirks's case. And in *Alex*, we pointed out the problem with this approach.

*Alex* gave the example of children living in a household who know that there is beer in the refrigerator or liquor in the cupboard — *i.e.*, alcoholic beverages stored in places where "it [was] within the children's physical power to gain access". We pointed out that if "possession" was broadly defined to mean "the power to exercise dominion or control over property", one could argue that the children were in possession of these alcoholic beverages, and thus guilty of a crime under AS 04.16.050 (minor in possession of alcoholic beverages). *Alex*, 127 P.3d at 851.

To avoid results like this, some courts have framed their definition of "possession" in terms of a person's "authority" or "right" to exert control over an item. See, for example, *State v. Henderson*, 696 N.W.2d 5, 9 (Iowa 2005). Other courts have

worded the test as whether the defendant had both the "power *and* intention" to exert control or dominion over the item. See, for example, *United States v. Cousins*, 427 F.2d 382, 384 (9th Cir. 1970).

These two approaches to defining "possession" do not yield exactly the same results in all situations, but they are both designed to avoid the kind of result that occurred in Dirks's case. A defendant may not be found guilty of "possessing" an item of property that belongs to someone else merely because the owner of the property has brought the property to the defendant's residence, vehicle, or place of business, and has placed the property within the defendant's reach, and the defendant is aware that the property is there.

For these reasons, we REVERSE Dirks's conviction.